COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF the IOWA STATE BAR ASSOCIATION, Complainant,

v.

G. Gifford MORRISON, Respondent.

No. 67969.

Supreme Court of Iowa.

June 16, 1982.

Karen E. Shaff, Des Moines, for complainant.

C. W. Garberson and Richard C. Garberson, Cedar Rapids, for respondent.

HARRIS, Justice.

The grievance commission recommends that G. Gifford Morrison, a lawyer, be reprimanded for misconduct on one of two counts in the complaint. Although Morrison's actions might justify more severe punishment we agree with the recommendation. Like the commission, we believe the showing of a violation of the second count was less than convincing. We give it no further attention.

The remaining count involves the drafting of a will and codicil by Morrison for a client of many years, Laura A. Casper. The attorney-client relationship was exceptionally close. Morrison first became acquainted with Mrs. Casper because she was the mother of one of his junior high classmates. Morrison was admitted in 1942 and entered practice in 1946, at the conclusion of the war. He thereafter was attorney for Mrs. Casper's husband, probated his estate, and served as his executor.

Mrs. Casper for many years had a standby conservatorship which was activated prior to the execution of either the will or codicil in question. Morrison was her conservator. By this time Mrs. Casper was a widow with no children and no living descendants. She was obviously much attached to Morrison and Morrison's wife. At one time, according to Morrison's testimony, Mrs. Casper executed a will in which Morrison was bequeathed $10,000. Upon learning this was an ethical violation Morrison advised her to remove the provision.

Mrs. Casper's last will, like the codicil which followed, was witnessed by Morrison's two secretaries. Morrison took great pains to explain he was only the scrivener of the will. Indeed, Morrison came close to over-explaining the fact in testifying before the commission:

Q. Did you, in fact, draft the will which Laura Casper executed on August 23, 1979?

A. Well, we—if you say by that, did I supervise the typing of it, that's right. The wording of it is her wording and I simply—that's the way I do wills. Now, maybe I'm wrong about that, but I never did think so. You talk to a client and you say what do they want to do, and then you try to put it down in written form just exactly what they wanted, and that's what happened there.

Neither the will nor codicil here are holographic. The wording of the instrument was obviously not that of Mrs. Casper. But we believe Morrison was not, by the above answer, attempting to have the commission believe otherwise.

By her will Mrs. Casper bequeathed the property by special bequests, one of which was as follows: "To Sarah Lu Morrison my fur coat, and any other personal effects in my home that she desires." Sarah Lu Morrison is the wife of the respondent. After naming Morrison executor and exonerating him from giving bond in excess of $5000, the will provided: "It is my request that both ordinary and extraordinary fees be allowed both to my executor and attorney for the services and expenses in my estate."

A codicil was executed by Mrs. Casper on August 23, 1979, a few months before her death. It added the following: "My executor and attorney will have a lot to do in the settlement of my estate and I direct my executor be paid a commission of five percent on all real estate sold, such commission to be in addition to the ordinary and extraordinary fees also allowed and paid."

After a complaint was made in behalf of one of the devisees, Mrs. Morrison did not claim the coat. Morrison bought it for $50 at the estate sale. There is no evidence to indicate Mrs. Morrison claimed any of the personal effects under the provision. Morrison said the provision to allow both ordinary and extraordinary fees is often placed in wills of his clients when they wish it. He states the provision in the codicil was the idea of Mrs. Casper.

Morrison was paid ordinary and extraordinary fees and was paid a five percent commission on the sale of extensive farmland which Mrs. Casper owned. He was also paid a five percent commission on the sale of her house. On the house, though not on the farms, an additional five percent was paid to a real estate broker.

We are much offended by the provisions in both the will and codicil for the payment of fees. The fees were not to be set by negotiation between Morrison and his client-ward but were to be allowed by the court under sections 633.197 and 633.198, The Code 1981. This fact cannot be altered by a provision in a will. If there were to result to a fiduciary or attorney some advantage beyond the statutes this would amount to a bequest. Such a bequest would be unprofessional. EC 5–5, Code of Professional Responsibility.

Morrison argues that the provisions were the idea of Mrs. Casper, not his. Morrison has placed himself in an impossible, as well as an unprofessional, position. Few people would believe that the idea for these provisions sprang up in the mind of his elderly client and ward. For this reason alone the provision for fees is unseemly. Such provisions have no place in a will and can only reflect adversely upon any lawyer who, under these circumstances, suffers them to be placed there. An attorney actually faced with such a proposal must insist that his client seek independent counsel. DR 5–101(B), Code of Professional Responsibility.

The same provision obviously prohibits any similar bequest to a spouse of a lawyer. The violation is not avoided because there was no enjoyment under the bequest. The misconduct arises from the provision as much as from any enjoyment.

For the violations described the respondent is reprimanded.

ATTORNEY REPRIMANDED.

All Justices concur except McGIVERIN, J., who takes no part.