In re Petition for DISCIPLINARY ACTION AGAINST John L. PRUETER, an Attorney at Law in the State of Minnesota.

No. C1–82–1663.

Supreme Court of Minnesota.

Dec. 21, 1984.

Michael J. Hoover, Dir. of Lawyers Professional Resp., William J. Wernz, St. Paul, for appellant.

Harvey E. Skaar, Minneapolis, for respondent.

PER CURIAM.

The Director of the Lawyer's Professional Responsibility Board (Director) petitioned this court for disciplinary action against respondent. By order of this court, the disciplinary action was referred to a referee for findings of fact and recommendations. The respondent seeks summary affirmance of the referee's recommendation to this court that respondent be given a private reprimand and be required to perform $5,000 of free legal services for the indigent. The referee found that respondent did not comport with Ethical Consideration 5-5 of the Minnesota Code of Professional Responsibility in drafting a will which named respondent and his wife as beneficiaries.

Respondent is a 60-year-old solo practitioner in the general practice of law. In 1969 respondent met Quentin Rawleigh Smith (Smith), Quentin's first wife, Roberta, and the Smiths' three children. Both Smith's and respondent's families had sum-mer homes in Longville, Minnesota. A strong business and personal relationship developed between the parties. Respondent represented Smith on all matters except for a time period from the spring of 1977 to August of 1978.

Smith divorced his first wife in 1972. He utilized outside counsel after respondent refused to handle the matter because of his personal relationship with both parties. A few weeks later, in February 1972, Smith married his second wife, Margaret, who signed an antenuptial agreement on the day of the wedding. The agreement was drafted by respondent, and provided that Margaret would receive nothing upon Smith's death unless otherwise provided for during his lifetime or in his will. Margaret had been married previously and had living children of that marriage. Respondent and his wife traveled to North Dakota with the Smiths to act as witnesses to the marriage. There was no issue of this marriage.

Smith had an income interest in a W.T. Rawleigh Trust, which produced approximately $40–50,000 income per year. Smith had the power to appoint either his wife or surviving children to receive that income in the event of his death. In 1970, Smith inherited one million dollars, with which he established the Quentin Rawleigh Smith Trust, with Northwestern National Bank as trustee. Between 1970–79, the trust dwindled to $270,000. Respondent was named guardian of Smith's children, and was designated contingent beneficiary of said trust if all named beneficiaries predeceased Smith. Smith's accountant, Aldrich Casey, was also named as a contingent beneficiary.

After Smith's marriage to Margaret, he exercised his power of appointment in the W.T. Rawleigh Trust in her favor. In 1972, a will was drafted giving Margaret the beneficial interest in his assets, but in the event of her death the assets would go to Smith's children. In 1974, the will was redrafted to provide that in the event of Margaret's death Smith's assets would go to *Margaret's* children. Finally, the Quen-

tin Rawleigh Smith Trust, prior to 1979, provided that its corpus would be distributed to Margaret and, in the event of her predeceasing Smith, then to all but one of her children.

The marriage was marked by a series of separations, commencement of divorce proceedings, and reconciliations. On April 17, 1979, Smith requested that respondent again serve divorce papers, revise his will and draft amendments to the trust agreements. On April 20, 1979, new instruments were drafted. The W.T. Rawleigh Trust was amended so the income was designated for Smith's children, and not Margaret. The will and the Quentin Rawleigh Smith Trust were revised so that one-half of the Quentin Smith estate would be distributed to respondent and his wife and the other half would be distributed to Aldrich Casey and his son. Respondent testified that Smith preferred this distribution because he felt that his relatives were well taken care of and that respondent, respondent's wife, and the Caseys were the only friends he had. His trust and probate assets amounted to approximately $325,000.

Respondent inquired of Smith why he didn't seek the services of another lawyer. Smith replied that if he chose to see another lawyer, he would do so. No other conversation with respect to a second attorney took place.

After respondent drafted the will he sent it to Charles Lloyd, vice president of Northwestern National Bank, as officer for the trusts. Lloyd had known Smith for ten years. Lloyd met with Smith on April 24, 1979, to discuss the changes in the disposition of his assets. Smith reconfirmed to Lloyd that there was no one else to whom he would prefer to leave his estate. On May 1, 1979, Smith committed suicide.

Minn.Code Prof.Resp. EC5–5 reads:

A lawyer should not suggest to his client that a gift be made to himself or for his benefit. If a lawyer accepts a gift from his client, he is peculiarly susceptible to the charge that he unduly influenced or over-reached the client. If a client voluntarily offers to make a gift to his lawyer, the lawyer may accept the gift, but before doing so, he should urge that his client secure disinterested advice from an independent, competent person who is cognizant of all the circumstances. Other than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client.

The referee held that respondent violated this provision. Respondent does not contest this holding. The Director argues that the discipline warranted by this type of violation should be more severe than that recommended by the referee.

The case law in Minnesota concerning an attorney's drafting a will of a client or friend in which he or she is the beneficiary has previously been discussed only in the area of probate law. Probate case law "unequivocally condemn[s]" and brands as "unethical" the practice of an attorney drafting a will in which he or his family has an interest. *In re Estate of Reiland,* 292 Minn. 460, 462, 194 N.W.2d 289, 290 (1972). In *Reiland,* where the beneficiary was the father of the attorney-scrivener, we said:

Where an attorney-scrivener or a member of his family is a beneficiary, his unprofessional conduct not only jeopardizes that bequest, but more important, may constitute undue influence which taints the entire will and destroys the validity of other bequests as well. *State v. Horan,* 21 Wis.2d 66, 74, 123 N.W.2d 488, 492 (1963). Consequently, by acting as scrivener, an attorney may completely frustrate the intentions of a client who has entrusted him with the solemn responsibility of seeing that his estate is distributed according to his wishes.

Although this decision was based on whether undue influence existed, this court philosophized that "professional honor dictates that under such circumstances the will be prepared by someone other than the beneficiary." *Id.*

■ This disciplinary case is one of first impression for this court. The question is what, if any, discipline should be invoked

**616**

against an attorney who makes himself or a member of his family a beneficiary in a will that he prepares. Several other states have considered the appropriate discipline for drafting a will in which the attorney benefits. Iowa has held that such a practice violates a lawyer's professional responsibility. *See Committee on Professional Ethics, Etc. v. Behnke,* 276 N.W.2d 838, 840 (Iowa 1979). The respondent in that case argued that the violation of an ethical consideration standing alone could not provide the basis for disciplinary action. The court rejected the argument and held that it was a violation of EC5-5 for a lawyer to draft a will making himself even a contingent beneficiary. The attorney in that case was suspended for three years. *Id.* at 846. Other states have also seen fit to discipline an attorney for drafting a will in which he was a beneficiary. *See In re Krotenberg,* 111 Ariz. 251, 527 P.2d 510 (1974) (six month suspension); *Columbus Bar Association v. Ramey,* 32 Ohio St.2d 91, 290 N.E.2d 831 (1972) (public reprimand); *In re Jones,* 254 Or. 617, 462 P.2d 680 (1969) (reprimand).

We feel compelled to clarify our attitude on this point for the benefit of the practicing bar. We do not condone such practice. Should an attorney draft a will in which he or a member of his family is to become a beneficiary, that portion of the will should be stricken. The public policy of such a result is quite convincing. Such wills provide a disservice in that they present a possible conflict of interest between the attorney, his client, and other beneficiaries. The public's perception of the profession is skewed because of such action. As the Oregon Supreme Court succinctly said: "Any lawyer should know, without being told, that when a client wants to make a testamentary provision for the benefit of the lawyer, that lawyer should withdraw from any participation in the preparation or execution of the will." *In re Jones,* 254 Or. 617, 618, 462 P.2d 680, 680 (1969). We agree with the referee that a violation of Ethical Consideration 5-5 of the Minnesota Code of Professional Responsibility has occurred. The purpose of the Code of Professional Responsibility is to protect the public and maintain its trust and confidence in the profession. To that end, propriety demands in such a serious matter that we publicly reprimand the respondent.

We therefore deny respondent's motion for summary affirmance of the referee's recommendation, and substitute a public reprimand as discipline of the respondent.