IOWA SUPREME COURT BOARD OF
PROFESSIONAL ETHICS AND
CONDUCT, Appellant,

v.

**Eldon J. WINKEL, Appellee.**

No. 95–1164.

Supreme Court of Iowa.

Dec. 20, 1995.

David Grace, Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for appellant.

Eldon J. Winkel, Algona, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL and TERNUS, JJ.

HARRIS, Justice.

■ We granted permission to the board of ethics to appeal the action of the grievance commission in this lawyer disciplinary case. The commission held that a private admonition was appropriate for the misconduct involved. We think a public reprimand is required.

The charge arises from the drafting of a will containing a bequest for the scrivener. Respondent Eldon J. Winkel has practiced law since 1959. Though he shares an office with his attorney brother, they are not partners, and employ different secretaries. Robert Bickert was unrelated to the respondent, but was a friend and longtime client. Over the course of many years respondent prepared a number of wills for Bickert. The last of these was executed on August 24, 1992, shortly before Bickert's death the following October. In contrast with all prior drafts, this will included a $20,000 bequest for the respondent and smaller bequests for the two secretaries who worked for respondent and his brother.

Bickert was said to be stubborn, strong-willed, obstreperous, domineering and opinionated. He had been estranged from his two daughters for two years or more prior to his death. In May 1992 Bickert underwent heart surgery, and during that summer was hospitalized for five days in a psychiatric hospital. Following his release from the hospital in June or July, Bickert went to respondent's home to ask for "input" from both respondent and his wife concerning what to do with his estate. Respondent made a tape-recording of at least part of their conversation. Bickert said he believed he wanted "to leave something" to Winkel and the two secretaries. Respondent remarked that he didn't have to leave him anything.

A few weeks later Bickert asked respondent to prepare a new will and to include a $20,000 bequest to him and smaller amounts to the secretaries. Respondent told Bickert he couldn't do this, that in order for this to be accomplished he would have to obtain another lawyer. Bickert protested and said he was not going to have another lawyer. Respondent again said he "just could not do it."

Respondent then prepared a will omitting the $20,000 bequest to himself and took the draft to Bickert who was again in the hospital. Bickert refused to sign it because he was dissatisfied with certain terminology in the will, and had decided to add a $5000 bequest to his local church. He also wanted respondent to include the $20,000 bequest to himself.

Another draft was prepared with the corrections, but omitting the $20,000 bequest. When Bickert was presented with the latest draft, he protested the omission. Bickert suggested first that respondent's brother draw a will containing the bequest. Told that ethical considerations would also prevent this, Bickert then suggested the course that was followed. Respondent's secretary, who had frequently done personal typing for Bickert, went to the hospital at respondent's

direction. There Bickert directed her to copy the latest will draft and to add the $20,000 bequest to respondent. The secretary did so, typing the will on respondent's office equipment.

When the will was probated, Bickert's daughter brought a will contest. Respondent then disclaimed the bequest but did serve as compensated executor and attorney for the estate. We are told the estate included assets of approximately $1 million.

The board's complaint against Winkel alleged a violation of DR 5–101(B) of the code of professional responsibility. That rule provides:

> A lawyer or the lawyer's partners or associates shall not prepare an instrument in which a client desires to name the lawyer beneficially unless the lawyer is the spouse of, or is the son-in-law or daughter-in-law of, or is otherwise related by consanguinity or affinity, within the third degree, to the client.[1]

We view a violation of this ethical rule as extremely serious. Few infractions can be calculated to so enrage the public, or to undermine its confidence in the profession, than for a lawyer to use his or her considerable influence to acquire personal ownership of the property of a trusting client.

It is no defense that the idea for the bequest originates with the client or that the bequest was not actually enjoyed. *Committee on Professional Ethics & Conduct v. Morrison*, 320 N.W.2d 564, 565 (Iowa 1982). It is certainly no answer that the lawyer exercised no undue influence in precipitating such a bequest. *Committee on Professional Ethics & Conduct v. Randall*, 285 N.W.2d 161, 165 (Iowa 1979), *cert. denied*, 446 U.S. 946, 100 S.Ct. 2175, 64 L.Ed.2d 802 (1980). Even a strong desire by the client to bequeath property to a lawyer will not justify the lawyer in drafting such a will. *Committee on Professional Ethics & Conduct v. Behnke*, 276 N.W.2d 838, 846, *appeal dismissed*, 444 U.S. 805, 100 S.Ct. 27, 62 L.Ed.2d 19 (1979). Lawyers who would enjoy the right to inherit property from persons disposed to favor them must take extreme pains to distance themselves from any professional activity incident to establishing the bequest. All professional advice and legal work in such an undertaking must come from an independent lawyer of the client's, not the initial lawyer's, choosing.

Certain factors in this case might be said to contradict Winkel's assertion that he completely spurned his client's entreaties. He would be on much firmer ground if his disclaimer of the bequest had preceded, rather than followed, the will contest. It is somewhat disquieting that the will contains a recital even beyond Bickert's previous intention to disinherit his daughters. The will also explains that Winkel, at least in part, was responsible for dissuading the testator from doing so. It seems at least highly unusual that this comment, which one must assume was calculated to ingratiate Winkel to Bickert's daughters, would actually appear as part of the will. But to find that Winkel controlled Bickert for this reason would be speculative, so we make no such finding.

The question to be resolved is whether Winkel should be suspended or reprimanded. As we always do in resolving such questions, we give respectful consideration to the commission's view. We cannot however agree with the adequacy of a private admonition and opt for a severe public reprimand.

Eldon J. Winkel is accordingly reprimanded for his violation of DR 5–101(C) (1995).

**ATTORNEY REPRIMANDED.**

---

**1.** Effective January 2, 1995, DR 5–101(B) was renumbered DR 5–101(C).