**[This opinion has been published in *Ohio Official Reports* at 76 Ohio St.3d 87.]**

OFFICE OF DISCIPLINARY COUNSEL *v*. GALINAS.

[Cite as *Disciplinary Counsel v. Galinas*, 1996-Ohio-421.]

*Attorneys at law—Misconduct—Indefinite suspension—Preparation of client's will where attorney is a named beneficiary and executor and attorney's daughter is named an alternative executor—Attempting to collect excessive attorney fees.*

(No. 96-435—Submitted May 7, 1996—Decided July 24, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 95-26.

———————————

{¶ 1} In a complaint filed February 6, 1995, relator, Office of Disciplinary Counsel, charged respondent, John Andrew Galinas of Parma Heights, Ohio, Attorney Registration No. 0029047, with two counts of professional misconduct. Count One charged respondent with a violation of DR 1-102(A)(6) (conduct adversely reflecting on fitness to practice law). Count Two charged respondent with a violation of DR 2-106(A) for attempting to collect excessive attorney fees. On November 10, 1995, a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court heard the matter upon stipulations, testimony, and other evidence. At the hearing, respondent admitted to the allegations in the complaint, including the allegations that he had violated DR 1-102(A)(6) and 2-106(A).

{¶ 2} Respondent was a long-time friend of Frances M. Bogovich. In 1991, Bogovich requested that respondent prepare her last will and testament. Respondent drafted the will in accordance with Bogovich's instructions. Respondent was named as a beneficiary in the will and as the executor of

Bogovich's estate. Respondent's daughter was named as an alternate executor.[1] Under the terms of the will, respondent, as a beneficiary, was to receive twenty percent of the net estate upon Bogovich's death. The remainder of the estate was left to Ika Buncic, Bogovich's housekeeper. The terms of the will made no provision for Bogovich's estranged brother. Respondent informed Bogovich prior to drafting the will that it would be unethical for him to prepare a will in which he was a named beneficiary. However, according to respondent, Bogovich had nevertheless insisted that respondent prepare the will as directed.

{¶ 3} In February 1992, respondent prepared a new will for Bogovich. The 1992 will contained essentially the same provisions as the 1991 will. The only difference between the two wills was that the 1992 version designated respondent as beneficiary of twenty percent of the net estate *excluding* all real property and household furniture. The residue of the estate, including Bogovich's real property and furniture, was left to Buncic. On February 8, 1992, Bogovich executed the new will. The execution of the will was witnessed by two of respondent's friends, one of whom was an attorney. The attorney who witnessed the signing of the will did not attempt to counsel or advise Bogovich concerning the clear ethical dilemma presented by respondent's having prepared a will in which respondent was a named beneficiary.[2] Bogovich died testate on February 20, 1992.

{¶ 4} Following Bogovich's death, the 1992 last will and testament was probated in the Court of Common Pleas of Cuyahoga County, Probate Division. The total value of the estate was $885,732.25. In addition to the probate assets, decedent had in excess of $67,000 in joint and survivorship bank accounts in which respondent was the surviving tenant. Respondent declined to serve as executor of

---

1. We recognize that the historical and common designation of a female testamentary personal representative has been "executrix." In our continuing efforts to make our language gender neutral, we now use the term "executor" in all cases.

2. The attorney-witness had been made aware of the contents of the will.

the estate, and, thus, respondent's daughter was appointed executor. Additionally, respondent served as attorney for the estate. No complaint to contest the will was ever filed in the matter.

{¶ 5} On January 14, 1993, respondent filed a motion with the probate court for an award of $150,000 in attorney fees for himself and $50,000 in fiduciary fees for his daughter in connection with the administration of Bogovich's estate. In requesting fees of this magnitude, respondent claimed that Bogovich had promised him that the attorney for the estate would receive $150,000 in attorney fees, and that the executor would receive $50,000 in fiduciary fees. However, Probate Judge John E. Corrigan found the request for attorney fees to be unreasonable. Specifically, Judge Corrigan found, among other things, that there had been a duplication in requests for compensation for work performed by respondent and his daughter, that no extraordinary legal services had been provided by respondent in connection with his representation of the estate, and that the estate was "relatively uncomplicated and routine." Judge Corrigan approved $10,000 as reasonable attorney fees for respondent, and $22,534.64 in fiduciary fees for respondent's daughter. Thereafter, respondent and his daughter appealed to the court of appeals, challenging the probate court's decision approving only a portion of the requested attorney and fiduciary fees. On appeal, the court of appeals affirmed the judgment of the probate court, holding that "[e]vidence submitted in this case supports a finding of undue influence and further supports a finding that Appellants failed to prove that their requested fees were reasonable." *Estate of Bogovich v. Cuyahoga Cty. Common Pleas Court* (Nov. 1, 1993), Cuyahoga App. No. 65353, unreported, at 4, 1993 WL 425200.

{¶ 6} As a result of Bogovich's death, respondent received approximately $130,000 as a beneficiary of the estate. Additionally, respondent received approximately $67,000 as the surviving tenant on joint and survivorship bank

accounts that he had held with Bogovich, and $10,000 in attorney fees for the actual legal services he had performed for the estate.

{¶ 7} With the foregoing evidence before it, the panel unanimously determined that respondent had violated DR 1-102(A)(6) by drafting the testamentary documents for Bogovich in which respondent was a named beneficiary, and in which respondent and his daughter were named as executor and alternate executor. The panel also found that respondent's attempts to collect $150,000 in attorney fees for work performed in representing the estate violated DR 2-106(A) because the fees were clearly excessive. Relator and respondent jointly recommended to the panel that respondent be suspended from the practice of law for a period of one year with six months of that sanction to be suspended. The panel rejected the joint recommendation. Instead, the panel recommended that respondent be indefinitely suspended from the practice of law. The Board of Commissioners on Grievances and Discipline of the Supreme Court adopted the findings of fact, conclusions of law and recommendation of the panel. The board also recommended that the cost of the disciplinary proceedings be taxed to respondent in any disciplinary order entered in this matter.

––––––––––––––––––

*Geoffrey Stern*, Disciplinary Counsel, and *Harold F. Craig III*, Assistant Disciplinary Counsel, for relator.

*John A. Galinas*, *pro se*.

––––––––––––––––––

**DOUGLAS, J.**

{¶ 8} Our review of the record supports the board's findings of misconduct and its recommendation that respondent be indefinitely suspended from the practice of law.

I

DR 2-106(A)

{¶ 9} DR 2-106(A) provides: "A lawyer shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." The record fully supports the board's finding that respondent violated DR 2-106(A) by attempting to collect $150,000 in attorney fees from Bogovich's estate. There was no litigation surrounding the estate, the estate was not particularly complex, and respondent provided no extraordinary services in representing the estate that could have conceivably justified a fee of that magnitude. Respondent has conceded a violation of DR 2-106(A), and that violation is adequately demonstrated on the record before us.

II

DR 1-102(A)(6)

{¶ 10} DR 1-102(A)(6) prohibits an lawyer from engaging in conduct that adversely reflects on his or her fitness to practice law. This court has determined, in a number of previous cases, that the provisions of DR 1-102(A)(6) are implicated where, as here, an attorney prepares a will for a client in which the attorney is named as a beneficiary of the client's estate. See, *e.g.*, *Mahoning Cty. Bar Assn. v. Theofilos* (1988), 36 Ohio St.3d 43, 521 N.E.2d 797 (attorney's license suspended for one year for violating DR 1-102[A][6] by preparing a will for an unrelated client in which the attorney and his son were named as sole beneficiaries, and for being named in survivorship capacity on client's joint and survivorship bank accounts); *Disciplinary Counsel v. Slavens* (1992), 63 Ohio St.3d 162, 586 N.E.2d 92 (attorney's license indefinitely suspended for, among other things, violating DR 1-102[A][6] by drafting an unrelated and vulnerable client's will in which the attorney and his children were named beneficiaries); and *Cincinnati Bar Assn. v. Clark* (1994), 71 Ohio St.3d 145, 642 N.E.2d 611 (attorney's license suspended for two years with one year of the sanction suspended for, among other things, violating

DR 1-102[A][6] by drafting a will for an unrelated client to benefit the attorney or the attorney's family).

{¶ 11} Additionally, EC 5-5 of the Code of Professional Responsibility provides that "[o]ther than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client." Although EC 5-5 is an ethical consideration and, thus, is only aspirational in character (see Preface, Code of Professional Responsibility), a reading of *Theofilos*, *Slavens* and *Clark*, *supra*, makes it abundantly clear that an attorney who fails to observe the standards embodied in EC 5-5 runs a grave risk of being found in violation of DR 1-102(A)(6) or other Disciplinary Rules. In *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 62-63, 567 N.E.2d 1291, 1296, a case that did not involve attorney discipline, this court made the following relevant observations with respect to EC 5-5:

"A client's dependence upon, and trust in, his attorney's skill, disinterested advice, and ethical conduct exceeds the trust and confidence found in most fiduciary relationships. Seldom is the client's dependence upon, and trust in, his attorney greater than when, contemplating his own mortality, he seeks the attorney's advice, guidance, and drafting skill in the preparation of a will to dispose of his estate after death. These consultations are often among the most private to take place between an attorney and his client. The client is dealing with his innermost thoughts and feelings, which he may not wish to share with his spouse, children and other next of kin.

"Because the decisions that go into the preparation of a will are so inherently private, and because, by definition, the testator will not be available after his death, when the will is offered for probate, to correct any errors that the attorney may have made, whether they are negligent errors or of a more sinister kind, a client is unusually dependent upon his attorney's professional advice and skill when he

6

consults the attorney to have a will drawn. The client will have no opportunity to protect himself from the attorney's negligent or infamous misconduct.

"It is for precisely these reasons that EC 5-5 of the Code of Professional Responsibility requires that, other than in exceptional circumstances, a lawyer must insist that an instrument in which he is beneficially named be prepared by another lawyer.

"* * * '[T]o insist' that another lawyer write the will means that the lawyer/beneficiary must refuse to write it himself." (Footnote omitted.)

{¶ 12} Here, respondent prepared a last will and testament for Bogovich on two separate occasions even though the wills named respondent as a beneficiary. Respondent knew that it was wrong and unethical to prepare the wills in question, but he went ahead and prepared them anyway. The panel and the board found, and we agree, that respondent violated DR 1-102(A)(6) by preparing the wills in which he was named as a beneficiary.

III

Sanction

{¶ 13} In recommending an indefinite suspension for respondent's professional misconduct, the board was particularly concerned by the fact that respondent had knowingly ignored the requirements of the Code of Professional Responsibility when he chose to prepare the wills in question. Specifically, the board was troubled by the notion that respondent may have engaged in a "cost/benefit analysis" when he chose to violate DR 1-102(A)(6), *i.e.*, that respondent may have weighed the possibilities of being caught for the disciplinary infraction (and the range of possible sanctions) against the economic benefits to be derived from drafting Bogovich's wills. The benefits associated with violating DR 1-102(A)(6) by drafting Bogovich's wills included that respondent, as beneficiary, stood to receive (and did receive) a generous percentage of Bogovich's estate. The board feared that respondent had chosen to prepare the wills despite the known

ethical violation because, among other things, the calculated benefits of preparing the wills had outweighed the calculated risks of receiving a harsh disciplinary sanction. Thus, in recommending an indefinite suspension, the board sought to send a strong message to attorneys who knowingly violate a Disciplinary Rule by preparing a will in which they have a beneficial interest that such conduct will be met with a harsh disciplinary penalty.

{¶ 14} Upon a review of the record, we are convinced that an indefinite suspension is the appropriate sanction for respondent's violation of DR 1-102(A)(6) and his attempts to collect a clearly excessive fee in violation of DR 2-106(A). Therefore, respondent is indefinitely suspended from the practice of law in this state. Costs taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., RESNICK and COOK, JJ., concur.

F.E. SWEENEY and STRATTON, JJ., dissent separately.

PFEIFER, J., dissents and would order a one-year suspension against respondent.

————————————

**STRATTON, J., dissenting.**

{¶ 15} I respectfully dissent from the majority's disposition of this case. I would impose a one-year actual suspension for violations found by the panel and require respondent, John Andrew Galinas, to return to the estate the funds he received from the bequest in the will. The majority speaks of Galinas's "cost/benefit analysis" in that the respondent expressed to Frances Bogovich that it would be unethical for him to prepare such a will, yet he went ahead and did so. While the majority believes that a harsh disciplinary sanction will discourage attorneys from engaging in a cost/benefit analysis in determining whether to commit malpractice, I believe that allowing the respondent to retain the approximately $130,000 he received from the estate will lessen the impact of such

a sanction. The respondent should not be permitted to keep the fruits of his unethical conduct, particularly when he knowingly engaged in such unethical conduct. Therefore, I would give the respondent a sanction of lesser duration, that being a one-year actual suspension, but require him to return all the fruits of his misconduct.

F.E. SWEENEY, J., concurs in the foregoing dissenting opinion.

_____