819 A.2d 372

ATTORNEY GRIEVANCE COMMISSION OF MARYLAND

v.

Charles F. STEIN, III.

Misc. No. 26, Sept. Term, 2002.

Court of Appeals of Maryland.

March 18, 2003.

Melvin Hirshman Bar Counsel and Raymond A. Hein, Assistant Bar Counsel for the Attorney Grievance of Maryland, for petitioner.

Thomas McDonough, Towson, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and RODOWSKY (retired, specially assigned), JJ.

RAKER, Judge.

Charles F. Stein, III, respondent, drafted a will for his client providing a substantial gift to himself where the client did not have the benefit of independent counsel in relation to the gift. Respondent engaged in an impermissible conflict of interest and violated Rule 1.8(c). The only real issue before this Court is the appropriate sanction to be imposed.

The Attorney Grievance Commission, acting through Bar Counsel, filed a petition with this Court for disciplinary action against respondent alleging a violation of the Maryland Rules of Professional Conduct. The Commission charged respondent with violating Rule 1.8(c).[1] We referred the matter to Judge Susan Souder of the Circuit Court for Baltimore County to make findings of fact and proposed conclusions of law.

Judge Souder held a hearing in the Circuit Court for Baltimore County. The parties entered into a stipulation of facts and based upon those stipulated facts, the hearing court

---

1. Rule 1.8, Conflict of interest: Prohibited transactions, reads, in pertinent part, as follows:

"(c) A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where:
(1) the client is related to the donee; or
(2) the client is represented by independent counsel in connection with the gift."

entered its ruling. Bar Counsel and respondent agreed to the following stipulation of facts:

"1. Charles F. Stein, III (hereinafter 'Respondent' or 'Stein') is an attorney licensed to practice law in the State of Maryland and has been so licensed since 1961. In the course of his career, two complaints have been filed with the Attorney Grievance Commission against the Respondent, both of which were dismissed without a hearing. No sanctions of any kind have ever been levied against the Respondent. Additionally, Respondent has received no warnings because of alleged violations of the disciplinary rules.

"2. Eleanor Lindinger (the 'Decedent') and her husband Xaver had been clients and friends of Charles F. Stein, Jr. (the father of the Respondent) since at least the 1950s.

"3. The Respondent joined his father's firm in 1961 and met the Decedent and her husband about that time.

"4. The Decedent and her husband owned and operated a bakery at 1300 Greenmount Avenue. There was a social aspect to the relationship between the Steins and the Lindingers to the extent that the Decedent would bring shortcakes and such to the Steins' offices when she visited and the Respondent would stop by their bakery and purchase items on his way home on occasion.

"5. Xaver Lindinger died in 1969 and the bakery was sold several years later. Charles Stein, Jr. died in 1979.

"6. The Respondent believes he did some minor legal work for the Lindingers prior to 1969 but believes the first work he performed after the death of Mr. Lindinger was a foreclosure of a mortgage held by the Decedent on the bakery, work which the Respondent rendered in 1981.

"7. Also in 1981, the Decedent asked the Respondent to prepare a will for her. That process was completed with her execution of the will in 1982. Mr. Stein was nominated to serve as co-personal representative of her Estate under that will. At the same time, the Decedent created a power of attorney. Mr. Stein was one of the attorneys-in-fact.

"8. In 1987, the Decedent indicated to Mr. Stein a desire to change her will. That process concluded in 1988 with a new will and the new power of attorney. Mr. Stein remained as co-personal representative and as attorney-in-fact although the co-personal representative (and the other attorney-in-fact) was changed.

"9. In the mid–1990s, the Decedent called Mr. Stein saying she was ready to make more changes in her will. She wasn't ready at that point to reduce those changes to writing and she and Mr. Stein agreed to speak in 6 months. Mr. Stein called her in 6 months and periodically after that until in 1998 Mrs. Lindinger indicated she was ready to reduce the new will to writing at which time she indicated the desire to make substantial changes both with respect to specific bequests and with respect to residuary legatees. At that time, Stein was of counsel to Royston, Mueller, McLean & Reid.

"10. In the course of discussing her new will with Mr. Stein, Mrs. Lindinger agreed to make the Respondent a residuary legatee in the will.

"11. At some point prior to execution of the will, Mr. Stein indicated to Mrs. Lindinger that she should talk to Harrison Stone, another estate lawyer in his firm, about the will. Mrs. Lindinger did not respond. Mr. Stein did not indicate to Mrs. Lindinger the necessity of seeing an independent attorney outside of the firm. Mrs. Lindinger did not, in fact, speak either to Mr. Stone or an independent attorney outside of Royston, Mueller, McLean & Reid about the bequest to Mr. Stein, although she did have an opportunity to speak to Mr. Stone at the time of execution of the will.

"12. On May 27, 1998, Mrs. Lindinger executed the will leaving one-third of her residuary estate to the Respondent. At the time, Mr. Stein was unaware of the existence of Maryland Rule of Professional Conduct 1.8.

"13. Following the execution of the will, Mr. Stein had a number of conversations with Mrs. Lindinger and, on one occasion, approximately 18 months after the execution of the

will, lunch in Little Italy with his wife and Mrs. Lindinger. However, following the execution of the will, Mrs. Lindinger never asked Mr. Stein to make changes to her will.

"14. Towards the end of Mrs. Lindinger's life, there were attempts made by Mr. Stein to contact Mrs. Lindinger about living wills or health care directives but Mr. Stein had no success in speaking to Mrs. Lindinger concerning these matters. Several attempts by close neighbors of Mrs. Lindinger concerning the same subjects were rebuffed.

"15. Mrs. Lindinger died on March 22, 2001.

"16. On March 29, 2001, Mrs. Lindinger's 1998 will was admitted to probate by the Register of Wills for Baltimore County, pursuant to a Petition for Probate filed by the Respondent and two other individuals nominated in the will to serve as co-personal representatives.

"17. Until very near the end of her life, Mrs. Lindinger was competent to manage her own affairs and to make her own decisions."

Judge Souder concluded that respondent violated Rule 1.8(c). The hearing court noted that respondent prepared a will for his client, Mrs. Lindinger, to whom he was not related. The will provided a substantial gift from the client to respondent, and the client was not represented by independent counsel in connection with the gift. Judge Souder also found that there was no indication that any improper influence or duress was brought to bear upon the client by respondent or anyone else and that respondent had suggested to his client many other alternative legatees for the gift.

No exceptions were taken by either party to the hearing court's ruling. The dispute between Bar Counsel and respondent centers upon the sanction to be imposed in this case. Respondent concedes the violation of Rule 1.8(c) but argues that the appropriate sanction is a reprimand. On the other hand, Bar Counsel recommends an indefinite suspension, with respondent's right to seek reinstatement conditioned upon his renunciation of any interest in the residuary bequest left to him in the will he prepared for his client.

The primary purpose in imposing discipline on an attorney for violation of the Rules of Professional Conduct is not to punish the lawyer but rather to protect the public and the public's confidence in the legal profession. *Attorney Grievance Comm'n v. Powell,* 369 Md. 462, 474, 800 A.2d 782, 789 (2002). Disciplinary proceedings also are aimed at deterring other lawyers from engaging in similar conduct. *Id.* at 474–75, 800 A.2d at 789. The purpose, however, "is not to punish the lawyer or to provide a basis upon which to impose civil liability." *Attorney Grievance Comm'n v. Monfried,* 368 Md. 373, 394, 794 A.2d 92, 104 (2002). When this Court imposes a sanction, it protects the public interest "because it demonstrates to members of the legal profession the type of conduct which will not be tolerated." *Attorney Grievance Comm'n v. Mooney,* 359 Md. 56, 96, 753 A.2d 17, 38 (2000). Finally, the public is protected when sanctions are imposed that are commensurate with the nature and gravity of the violations and the intent with which they were committed. *Attorney Grievance Comm'n v. Awuah,* 346 Md. 420, 435, 697 A.2d 446, 454 (1997).

We have no doubt that respondent violated Rule 1.8(c), which provides that a lawyer shall not prepare an instrument, including a testamentary gift, giving the lawyer any substantial gift from a client except where the lawyer is related to the client or where the client is represented by independent counsel. The Rule is mandatory and contains no provision for waiver of the requirement to consult with independent counsel. *Compare* Rule 1.8(c), *with* Rules 1.7, 1.8(a), (b), (f), (g), (i), 1.9(a) (allowing client to waive conflict of interest without consulting with independent counsel). The Rule is qualified in only three ways: (1) if the gift is not "substantial," (2) if the client is related to the attorney, or (3) if the client has consulted with independent counsel. Unlike the provision under the Ethical Considerations of our prior rule, this provision and prohibition is express and mandatory. Respondent drafted a will for his client in which he stood to inherit a substantial gift. He was not related to the client, and the client did not consult with independent counsel. The

independent counsel required by the Rule must be truly independent—the requirement of the Rule may not be satisfied by consultation with an attorney who is a partner of, shares space with, or is a close associate of the attorney-drafter. *See, e.g., People v. Berge,* 620 P.2d 23, 27 (Colo.1980); *State v. Beaudry,* 53 Wis.2d 148, 191 N.W.2d 842, 844–45 (1971).

Discipline for violation of Rule 1.8(c) is a question of first impression for this Court. We view the violation as a most serious one. There are many potential dangers inherent in an attorney drafting a will in which he or she is the beneficiary. Conflict of interest, the attorney's incompetency to testify because of a transaction with the deceased, the attorney's ability to influence the testator, the possible jeopardy to probate of the entire will if its admission is contested, the possible harm to other beneficiaries and the undermining of the public trust and confidence in the legal profession are some of the dangers. *See In re Polevoy,* 980 P.2d 985, 987 (Colo.1999); *see also* Philip White, Jr., Annotation, *Attorneys At Law: Disciplinary Proceedings for Drafting Instrument Such as Will or Trust Under Which Attorney–Drafter or Member of Attorney's Family or Law Firm is Beneficiary, Grantee, Legatee, or Devisee,* 80 A.L.R.5th 597 (2000). The danger in drafting a self-benefitting will was pointed out articulately by the Supreme Court of Ohio in *Disciplinary Counsel v. Galinas,* 76 Ohio St.3d 87, 666 N.E.2d 1083 (1996). The court stated:

> "A client's dependence upon, and trust in, his attorney's skill, disinterested advice, and ethical conduct exceeds the trust and confidence found in most fiduciary relationships. Seldom is the client's dependence upon, and trust in, his attorney greater than when, contemplating his own mortality, he seeks the attorney's advice, guidance, and drafting skill in the preparation of a will to dispose of his estate after death. These consultations are often among the most private to take place between an attorney and his client. The client is dealing with his innermost thoughts and feelings,

which he may not wish to share with his spouse, children and other next of kin.

"Because the decisions that go into the preparation of a will are so inherently private, and because, by definition, the testator will not be available after his death, when the will is offered for probate, to correct any errors that the attorney may have made, whether they are negligent errors or of a more sinister kind, a client is unusually dependent upon his attorney's professional advice and skill when he consults the attorney to have a will drawn. The client will have no opportunity to protect himself from the attorney's negligent or infamous misconduct."

*Id.* at 1086 (quoting *Krischbaum v. Dillon,* 58 Ohio St.3d 58, 567 N.E.2d 1291, 1296 (1991)).[2]

The drafting of wills by an attorney named as the beneficiary or donee has provoked ethical difficulties for many years. The Supreme Court of Wisconsin has noted that "[i]n ancient times under Roman law a legacy to one who drew the will was invalid." *State v. Horan,* 21 Wis.2d 66, 123 N.W.2d 488, 491 (1963). Although in most jurisdictions such a legacy is not

---

**2.** At the time of the *Galinas* decision, the Ohio Bar was governed by the Disciplinary Rules and EC 5–5 which were less strict than Rule 1.8(c). *See* discussion *infra.* The Supreme Court of Ohio has since reconsidered its rules and has held that a violation of the disciplinary rule would result in suspension from the practice of law. Previously, there were circumstances under which an attorney or family member could be a beneficiary. In *Toledo Bar Ass'n v. Cook,* the Ohio Supreme Court stated:

> "[E]ven with the best intentions, an attorney risks the possibility of exploiting his client when their interests become so intertwined. We therefore reconsidered the ethical propriety of the situation and resolved that these risks are untenable. Thus, effective May 1, 1996, we amended the Code of Professional Responsibility to specify that there are *no* circumstances under which an attorney may prepare a will or trust in which the attorney, the attorney's family, or the attorney's affiliates are named beneficiaries, unless the beneficiary is related to the client. DR 5–101(A)(2). See, also, Amendments to the Code of Professional Responsibility, 75 Ohio St.3d XCVI (comments regarding the rule amendment). Today we hold that a violation of DR 5–101(A)(2) requires an attorney's actual suspension from the practice of law."

97 Ohio St.3d 225, 778 N.E.2d 40, 43 (2002).

void, many states create an inference or a presumption of undue influence.[3] The history of the Maryland Rules of Professional Conduct demonstrates the strong disfavor with which this Court views such conduct. Rule 1.8(c) was adopted in its present form by this Court on April 15, 1986, effective January 1, 1987.[4]

---

**3.** Such transactions between an attorney and client are viewed with great suspicion and are closely scrutinized in this State. We have considered transactions between an attorney and a client in contexts other than attorney discipline matters. *See, e.g., Chevy Chase Bank v. Chaires*, 350 Md. 716, 715 A.2d 199 (1998); *Atlantic Richfield Co. v. Sybert*, 295 Md. 347, 456 A.2d 20 (1983); *Hughes v. McDaniel*, 202 Md. 626, 633–34, 98 A.2d 1, 4–5 (1953). In that regard, we stated:

"In fact, any challenged transaction between an attorney and client is *prima facie* fraudulent and void, and the burden is cast upon the attorney to show that he used no undue influence or deception, that the transaction was fully understood, and that it was fair in all respects. This rule is founded upon public policy, because the confidential and fiduciary relationship enables an attorney to exercise a very strong influence over his client and often affords him opportunities to obtain undue advantage by availing himself of the client's necessities, credulity and liberality. As we said in *Baker v. Otto*, 180 Md. 53, 22 A.2d 924 [(1941)], courts of equity look upon transactions between attorney and client with great solicitude, and exercise the most exact scrutiny to be certain that the attorney has not taken any unfair advantage of his client. When a transaction between attorney and client is attacked, the presumption of fraud or unfairness can be overcome only by the clearest and most satisfactory evidence. Where the attorney is in a position to exercise strong influence, and the client is not skilled in business and is easily influenced, the burden on the attorney to sustain the transaction with his client is extremely stringent."

*Hughes*, 202 Md. at 633–34, 98 A.2d at 4–5. Other jurisdictions similarly have concluded that public policy necessitates a shift in the burden of proof to require that the attorney, not the person challenging the instrument, prove an absence of undue influence. *See, e.g., In re Imming*, 131 Ill.2d 239, 137 Ill.Dec. 62, 545 N.E.2d 715, 722 (1989); *In re Smith*, 572 N.E.2d 1280, 1285–86 (Ind.1991).

**4.** Prior to the adoption of Rule 1.8(c), attorney conduct was governed by the Maryland Code of Professional Responsibility. The Code was based on the ABA Model Code of Professional Responsibility, composed of general canons, with disciplinary rules and ethical considerations applicable to each canon. Although no provision of the Code correlated explicitly to Rule 1.8(c), Canon 5, which stated that "a lawyer should exercise independent judgment on behalf of his client," reflected the Court's concern with attorneys receiving gifts and bequests from clients. Ethical Consideration 5–5 stated, in pertinent part, as follows:

Rule 1.8(c) is closely tailored to the model rule adopted by the American Bar Association in August 1983. On October 27, 1983, this Court appointed the Select Committee of the Court of Appeals of Maryland to Study the ABA Model Rules of Professional Conduct and consider their adoption in this State. On January 18, 1985, the Select Committee presented its report to this Court, recommending adoption of the ABA's model rules, with certain specific modifications. Rule 1.8(c)(2) reflects one such deviation. The version of Rule 1.8(c) recommended by the Select Committee and subsequently adopted by this Court was originally proposed by the ABA Commission on Evaluation of Professional Standards (the "Kutak Commission"). Under the ABA version, the only exception to the rule's prohibition is where the attorney is related to the client. In contrast, the Kutak Commission version of Rule 1.8(c), adopted by this Court, contains an additional exception for situations "where the client is represented by independent

---

"EC 5–5 A lawyer should not suggest to his client that a gift be made to himself or for his benefit. If a lawyer accepts a gift from his client, he is particularly susceptible to the charge that he unduly influenced or over-reached the client.... Other than in exceptional circumstances, a lawyer should insist that an instrument in which his client desires to name him beneficially be prepared by another lawyer selected by the client."
Disciplinary Rule 5–101(A) provided as follows:
"(A) Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests."
Attorneys in other jurisdictions have been disciplined under the Canons of Professional Ethics for drafting instruments including a bequest to themselves. *See, e.g., People v. Berge,* 620 P.2d 23 (Colo.1980); *Florida Bar v. Miller,* 555 So.2d 854 (Fla.1990); *In re Prueter,* 359 N.W.2d 613 (Minn.1984); *In re Mulrow,* 241 A.D.2d 7, 670 N.Y.S.2d 441 (N.Y.App. Div.1998); *Disciplinary Counsel v. Galinas,* 76 Ohio St.3d 87, 666 N.E.2d 1083 (1996); *State v. Horan,* 21 Wis.2d 66, 123 N.W.2d 488 (1963); Charles W. Wolfram, *Modern Legal Ethics* 487 (1986) (citing cases).
In 1983, the ABA adopted the Model Rules of Professional Conduct. Most of the states have adopted some form of the Model Rules. *See* Philip White, Jr., Annotation, *Attorneys At Law: Disciplinary Proceedings for Drafting Instrument Such as Will or Trust Under Which Attorney–Drafter or Member of Attorney's Family or Law Firm is Beneficiary, Grantee, Legatee, or Devisee,* 80 A.L.R.5th 597, § 2[a] (2000).

counsel in connection with the gift." Rule 1.8(c)(2). The Court adopted Rule 1.8(c) as recommended by the Select Committee.

The Maryland version of Rule 1.8(c) is unique among the forty-five jurisdictions that have adopted a version of the ABA Model Rule 1.8(c). The report of the Special Committee which recommended the adoption of Rule 1.8(c) in its present form described the debate surrounding the "independent counsel" exception:

"Paragraph (c) of ABA Model Rule 1.8 was ... subjected to vigorous analysis. Two members [of the seven member committee] felt that gifts of this type, except where the client and lawyer are related, should be absolutely prohibited because of the potential for harm. A majority felt that the requirement of representation by independent counsel was adequate protection and that an absolute prohibition would not only be impractical but also that it is unnecessary and would unfairly restrict a client's donative intent."

Report of the Select Committee of the Court of Appeals of Maryland to Study the ABA Model Rules of Professional Conduct, 11:25 Md. R. 7 (Dec. 7, 1984). Even under this less stringent form, however, the rule remains an absolute prohibition against substantial transactions not covered by the two limited exceptions.

Respondent suggests that the appropriate sanction is a reprimand. In mitigation, he argues that he was not aware of the specific rule in question; that he is sixty-nine years of age and was admitted to the Bar in 1961; that he is presently semi-retired; and that he has had no prior disciplinary sanction imposed against him. Further, he concludes that there was no undue influence imposed upon the client and that the will reflects her true intent.

■ Respondent's defense of ignorance of the rule is no defense at all. Lawyers admitted to practice in this State are deemed to know the Rules of Professional Conduct and have the obligation to act in conformity with those standards as a requirement to practice law. *See Attorney Grievance*

*Comm'n v. Jeter*, 365 Md. 279, 292, 778 A.2d 390, 397 (2001). Respondent acknowledges that the idea to grant him a portion of the residuary was his suggestion. Respondent stood to gain $116,988.79 from the estate, a not insubstantial amount. Respondent knew, or should have known, that drafting a will in which he was named a beneficiary created an obvious and facial conflict of interest. He appeared to recognize the conflict of interest in recommending that Mrs. Lindinger consult with other counsel, albeit not independent counsel outside respondent's firm. When she did not, he proceeded to draft the will. Respondent acted with conscious awareness of the nature of his conduct.

We find an indefinite suspension is warranted in this case. While respondent's lack of prior ethical violations is a mitigating factor, it does not justify a reprimand. As stated above, we consider a violation of Rule 1.8(c) to be most serious. Respondent's conduct undermines the public confidence in the legal profession in a particularly egregious manner.

Courts in other jurisdictions have found suspension proper for attorneys who draft instruments in which they are named beneficiaries. *See In re Polevoy*, 980 P.2d 985 (Colo.1999); *In re McCann*, 669 A.2d 49 (Del.1995); *Florida Bar v. Anderson*, 638 So.2d 29 (Fla.1994); *In re Watson*, 733 N.E.2d 934 (Ind.2000); *Kalled's Case*, 135 N.H. 557, 607 A.2d 613 (1992); *Disciplinary Counsel v. Bandy*, 81 Ohio St.3d 291, 690 N.E.2d 1280 (1998); *In re Gillingham*, 126 Wash.2d 454, 896 P.2d 656 (1995); *see also In re Vitko*, 519 N.W.2d 206 (Minn.1994) (ordering that attorney with prior disciplinary violations be disbarred for violation of Minnesota's Rule 1.8(c) despite absence of actual harm to testator). Although some courts have imposed a reprimand for attorneys who draft such instruments, such decisions typically are under the Canons of Professional Ethics as opposed to the more stringent Rule 1.8(c). *See Florida Bar v. Miller*, 555 So.2d 854 (Fla.1990); *Iowa Supreme Court Bd. of Prof'l Ethics and Conduct v. Winkel*, 541 N.W.2d 862 (Iowa 1995); *In re Prueter*, 359 N.W.2d 613 (Minn.1984); *State v. Horan*, 21 Wis.2d 66, 123 N.W.2d 488 (1963). *But see In re Mangold*, 148 N.J. 76, 689 A.2d 722

(1997) (reprimanding attorney for violation of New Jersey's Rule 1.8(c) without discussion of circumstances of violation).

In addition to an indefinite suspension, Bar Counsel urges us to require as a condition of reinstatement that respondent disclaim his interest in Mrs. Lindinger's estate. Bar Counsel has not directed us to any case in the country that has required an attorney as a condition of reinstatement or as a condition to continue in practice to return money received from an estate or to renounce or disclaim a bequest. Under the circumstances presented in this case, we decline to do so.

Disclaimer or rejection of the bequest as a condition of reinstatement has arisen in several Ohio cases, the notion receiving support in at least two dissenting opinions. In *Disciplinary Counsel v. Galinas*, the majority engaged in a thoughtful "cost/benefit analysis," with consideration to the concerns of the Ohio Board of Commissioners on Grievances and Discipline that the attorney may have calculated the benefits of preparing wills with the bequest to himself outweighing the risk of receiving a harsh disciplinary sanction. 666 N.E.2d at 1087. Nonetheless, the court imposed a suspension without the condition. *See id.* Similarly, in *Mahoning County Bar Ass'n v. Theofilos*, 36 Ohio St.3d 43, 521 N.E.2d 797 (1988), an attorney who prepared a will for a client under which the attorney and his son would benefit substantially was suspended for a year; the court declined to require the return of the assets totaling more than $200,000 as a condition of reinstatement. The dissent in both cases would have required the return of the money. *See Galinas*, 666 N.E.2d at 1087 (Stratton, J., dissenting); *Theofilos*, 521 N.E.2d at 799 (Holmes, J., dissenting).

We are not unmindful of the potential for a "cost/benefit analysis" leading to the violation of the rule. In this case, however, there is no evidence that respondent engaged in such conduct, and we further note that one of the other residuary legatees to Mrs. Lindinger's estate has contested the bequest in the will in the Orphan's Court for Baltimore County. That matter was stayed pending the resolution of this disciplinary

matter. All the issues, including the donative intent and the issue of undue influence, may be appropriately resolved in the other forum. Ordinarily, that will be the proper approach. This approach is consistent with the principles underlying the Model Rules, as set forth in the preamble:

"Violation of a Rule should not give rise to a cause of action nor should it create any presumption that a legal duty has been breached. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability."

Indefinite suspension is the appropriate sanction. It is hereby ordered that:

1. Respondent, Charles F. Stein, III, is indefinitely suspended from the practice of law in Maryland. This period of suspension shall commence thirty (30) days from the date of entry of this Opinion and Order.

2. Respondent is directed to pay all costs associated with these disciplinary proceedings as taxed by the Clerk of this Court.

*IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND RULE 16-761, FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST CHARLES F. STEIN, III.*

CATHELL, J., concurs.

WILNER and HARRELL, JJ., dissents.

Concurring opinion by CATHELL, Judge.

I concur with the majority opinion. I write separately only to address Judge Wilner's dissent. Although I have not so written in an actual dissent, I have always argued that I believe it to be inconsistent to find that a person must be suspended or disbarred because he is a danger to the public,

but at the same time create conditions, *i.e.,* monitoring, attendance at rehabilitation clinics, etc., upon the compliance with which, the person may have the suspension lifted or be readmitted. It has been, and is, my position that upon a request for the lifting of a suspension or a request or readmission, the Court should, at that time, look to what a particular person has voluntarily done to warrant the lifting of the suspension or readmission to the bar. It is in that context, that I will consider whether the improper legacy in this case has been voluntarily renounced.

As I see it, Judge Wilner's concerns can be addressed either way. Accordingly, I do not disagree with the general thrust of his remarks, but, I believe the issue of renunciation is better addressed at a subsequent point in the process.

Dissenting opinion by WILNER, Judge, in which
HARRELL, Judge, joins.

In 1998, respondent prepared a Will for his client, Ms. Lindinger. At his suggestion, she agreed to make him a residuary legatee, and he included such a provision in the Will that he drafted for her. That legacy is apparently worth nearly $117,000. Ms. Lindinger was not related to respondent, and at no time did respondent advise his client to seek independent legal advice; nor or did she, in fact, have such advice. On these undisputed facts, the Court correctly concludes what respondent has conceded—that he violated Rule 1.8(c) of the Maryland Rules of Professional Conduct. Rule 1.8 deals generally with conflicts of interest and prohibited transactions. Section (c) states:

"A lawyer shall not prepare an instrument giving the lawyer or a person related to the lawyer as parent, child, sibling, or spouse any substantial gift from a client, including a testamentary gift, except where:

(1) the client is related to the donee; or

(2) the client is represented by independent counsel in connection with the gift."

This is a simple Rule to follow, and the Court seems to recognize that it is an important Rule to follow. Yet, citing only some Ohio cases, which also carried dissents, in support, the Court eschews the one sanction that, more than any other, will assure that the Rule *is* followed. It rejects Bar Counsel's eminently reasonable request that, as a condition to practicing law henceforth, respondent renounce the legacy he wrongfully suggested to his client and included in her Will. With respect, I dissent from that rejection.

Consider what the Court holds: (1) respondent's defense that he was unaware of the Rule "is no defense at all"; (2) respondent acknowledges that the idea to grant him a portion of the residuary estate was his suggestion; (3) respondent stood, and stands, to gain $116,988 from the estate, "a not insubstantial amount"; (4) respondent knew or should have known that drafting a Will in which he was a named beneficiary "created an obvious and facial conflict of interest," which he "appeared to recognize"; and (5) respondent "acted with conscious awareness of the nature of his conduct." The simplest response to this conduct—the most effective response to this conduct—is to say to respondent, if you ever wish to continue to practice law in this State, renounce the legacy you wrongfully created for yourself.

We have said many times that the principal purpose of a sanction is to protect the public, not to punish the errant lawyer. What is it we are trying to protect against? When a lawyer prepares a Will or other dispositional document for a client and, in violation of the Rule, includes himself or herself as a beneficiary, the actual circumstances under which the client agreed to that disposition may never be known. As here, the client often will have died before the matter even comes to light, and, because the client is obviously not available to testify, all evidence regarding the client's true intent and state of mind will usually then be secondary evidence. If there is a challenge, which there may not be, a presumption of breach of fiduciary duty may arise, but it is a presumption that is often easily rebutted through the testimony of the lawyer and witnesses friendly to the lawyer. There may be no

one else with personal knowledge of what actually occurred. Meanwhile, as here, the estate is tied up in litigation while one or more courts wrestle with the decedent's state of mind and whether the lawyer exercised undue influence. The estate cannot be settled until the matter is resolved; legacies are reduced as lawyers' fees and other litigation and delay costs mount.

All of this can be avoided by the simple expedient of requiring the lawyer, as a minimal sanction for violating the Rule, to disgorge what the lawyer wrongfully created. If lawyers know that a violation of the Rule will bring them no financial gain, they will have no incentive to violate the Rule, and *that,* above all else, is what will protect the public. In a sense, it is the same basis upon which the courts have fashioned an exclusionary rule for violations of the Fourth, Fifth, and Sixth Amendments. Yes, overzealous law enforcement officers who violate citizens' Constitutional rights may possibly be held liable for civil damages, or even criminally responsible for their conduct in egregious cases, but those kinds of sanctions are not what protects against such intrusions. It is the knowledge that the violation will produce no benefit—that the evidence uncovered by reason of the violation will be unusable. The same approach should be applied here: simply remove from the lawyer the gain achieved by the violation.

I can conceive of situations in which a suspension is not really necessary, where a renunciation of the benefit will suffice, perhaps along with a reprimand. By rejecting renunciation as even a permissible sanction, however, the Court has created for itself a real dilemma—either opt for a suspension, which may be unnecessary and far too drastic in some circumstances, or opt only for a reprimand, which may be entirely too lenient. In choosing between the two, the Court presumably cannot be influenced either by the amount of the potential benefit, for that would create a swamp of inconsistent decisions, or by the circumstances under which the benefit was created, for the Court seems determined to leave that to collateral litigation. It has removed from its arsenal the one

sanction that, in my judgment, will nearly *always* be appropriate.

It is curious that, until this case, we have not seen this situation, yet we now have a second case—a similar situation—pending. I wonder how many other cases are out there that we simply do not see. The Court needs to make a firm and effective statement. It has the opportunity to do so, and, in my judgment, it is wrong in not seizing that opportunity.

Judge HARRELL has authorized me to state that he joins in this dissenting opinion.