In the Matter of EMANUEL GERTLER, an Attorney, Respondent.

First Department, January 13, 1928.

**Attorney and client — disciplinary proceedings — attorney disbarred for conversion of money.**

The respondent, an attorney, furnished his services to a man who was brought before the Night Court. In that action, bail was fixed at $500, and the client's son-in-law gave to the respondent the amount of bail in cash, which was deposited and the client released. Upon arraignment respondent did nothing but ask a policeman two questions, and new bail was fixed at $500 and respondent told his client that it would be necessary to put up new bail. A bail bond was furnished by one of respondent's friends. Later, respondent received a check from the chamberlain of the city of New York for the original cash bail, deposited this check in his account and immediately checked out the same. The person who furnished the cash bail endeavored without success to have respondent return the amount and denied any arrangement whereby respondent might retain $200 for services rendered to his client. Respondent testified that his reason for withdrawing the money from the bank was because of proceedings threatened against him by the person who furnished the bail. Respondent's contention that after this proceeding was commenced, $500 was deposited to be held pending settlement of the controversy, shows no connection between the respondent and the person who furnished him the money for cash bail. Under the circumstances the respondent is disbarred.

DISCIPLINARY proceedings brought by the Association of the Bar of the City of New York.

*Einar Chrystie*, for the petitioner.

No appearance for the respondent.

DOWLING, P. J. The respondent was admitted to the bar in May, 1924, in the New York Supreme Court, Appellate Division, Second Department. The facts established upon the hearings before the official referee, nearly all of which are uncontroverted, are summarized as follows:

Late in the evening of October 15, 1925, John Panuska was arrested and brought to the Magistrate's Night Court for arraignment on the charge of carrying a revolver without a permit. The respondent, who frequented the Night Court, approached Panuska when he was brought there for arraignment and volunteered his services as counsel. Panuska accepted the offer. Nothing was done that night except to fix bail in the sum of $500. The respondent having learned from Panuska that he had a son-in-law named Lessner who could bail him out sent a messenger to Lessner's house and a short time thereafter Lessner came to the court house an l

gave the respondent $500 in cash to be deposited as bail to secure Panuska's release. The respondent gave Lessner a receipt for the money of which the following is a copy:

" Received from James J. Lessner $500 applied in cash bail in case of Peo. vs. John Panuska. October 15, 1925.
" EMANUEL GERTLER."

The respondent deposited the money as bail and accepted a receipt from the warden of the jail in which receipt it was stated that the respondent had furnished the money deposited. A day or two thereafter Panuska was arraigned in the Magistrate's Court and held for trial in the Court of Special Sessions. The only service then rendered by the respondent in behalf of Panuska consisted in asking the policeman who made the arrest two questions as follows:

" By Mr. Gertler: Q. Did you say that you took it out of the pocket? A. Yes. Q. Did you take it out or somebody else take it out? A. I took it out."

The court having again fixed the bail in the sum of $500 it became necessary to renew the security. The respondent, instead of using the money which had been deposited by him as aforesaid for this purpose, told his client that it would be necessary to obtain a new bail bond. This was done at an expense of $20. The person furnishing the bond was one of the respondent's friends from whom he subsequently rented office space. Panuska thereafter determined to retain other counsel to represent him in the Court of Special Sessions and no further services were rendered in the matter by the respondent. On November 6, 1925, a check for $500, previously deposited as bail, was sent to the respondent by the chamberlain of the city of New York. When he received this check from the chamberlain respondent had an account in the East River National Bank in which there was a balance to his credit of only $1.53. He deposited the check in this account and immediately began to draw checks against the deposit. During the following week he drew sixteen checks as a result of which all the money deposited was withdrawn and his bank account was overdrawn to the extent of $122. Thereafter Lessner made repeated efforts to secure the return of his money, all of which were unsuccessful except on one occasion the respondent said he would give him $300 and retain the balance of $200 for services rendered in behalf of Panuska. Lessner replied that he would not accept this amount in settlement.

The respondent's contention that Panuska and Lessner stated to him in substance that it was agreeable to them that he deduct his fee from the $500 received from the chamberlain and pay the balance to Panuska, who would in turn repay Lessner, is denied

by them. No part of the money has been repaid to anybody. The respondent admitted that Lessner was under no obligation to pay any fee for services rendered in behalf of Panuska. In the face of this admission his excuse for withdrawing all the money from his bank account is most remarkable. He testified that " Lessner was threatening a proceeding against me and I did not want to leave anything in the bank account if he did institute a suit."

In other words, he deliberately planned to prevent Lessner from collecting, even if he resorted to legal proceedings. The respondent claimed that after he learned that a complaint had been made against him he gave $500 in cash to one Unger to hold as a deposit pending the settlement of the controversy and that he went with Unger to a bank and saw him deposit this money. He failed to produce Unger to substantiate his claim although Unger was available as a witness. The representative of the bank in which it was alleged the cash had been deposited conclusively established that no deposit of $500 in cash had been made as claimed. It appeared that an account was opened by Unger depositing a check of $500 on January 15, 1926, and that the bank book was held until after the check had been collected. There is absolutely no evidence to show that either the respondent or Lessner had any connection with the check deposited.

The respondent's failure to repay the money to Lessner is entirely without excuse or justification. The evidence clearly shows that he converted Lessner's money to his own use and even now defiantly asserts a right to retain it in payment for the slight service he rendered for Panuska after volunteering his assistance while frequenting the Night Court in search of business.

The respondent has demonstrated his unfitness to remain a member of the legal profession, and he should be disbarred.

FINCH, McAVOY, MARTIN and O'MALLEY, JJ., concur.

Respondent disbarred.