[650 NYS2d 668]

In the Matter of MICHAEL F. MULROW (Admitted as MICHAEL FRANCIS MULROW), an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, December 3, 1996

**APPEARANCES OF COUNSEL**

*Sherry K. Cohen* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Gentile & Benjamin* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent, Michael F. Mulrow, was admitted to the practice

of law in the State of New York by the First Judicial Department on April 7, 1980, as Michael Francis Mulrow.

Pursuant to 22 NYCRR part 1300, the Lawyers' Fund for Client Protection informed the Departmental Disciplinary Committee (the Committee) of a dishonored check from respondent's IOLA account. The Committee then initiated an investigation of respondent, during which it requested, *inter alia*, that respondent submit an answer and forward copies of required bookkeeping records pertaining to the IOLA account in question.

The record establishes that, although respondent has cooperated with the investigation at some level, he has engaged in a pattern of conduct designed to portray the dishonored check as an "oversight" in calculating the amount of funds in his IOLA account and to identify almost all the funds in this account as personal funds. In fact, the dishonored check is just one indication of a pattern of misconduct in which respondent engaged in order to conceal the fact that he failed to commence a medical malpractice action before the expiration of the Statute of Limitations. Thus, in addition to neglect of a legal matter, respondent has engaged in affirmative misrepresentations to clients and the Committee, and the commingling and conversion of client funds.

The Departmental Disciplinary Committee now petitions for an order pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) immediately suspending respondent from the practice of law until further order of the Court based upon respondent's substantial admissions under oath that he has committed acts of professional misconduct and upon other uncontroverted evidence of professional misconduct. 22 NYCRR 603.4 (e) (1) provides as follows:

"An attorney who is the subject of an investigation, or of charges by the Departmental Disciplinary Committee of professional misconduct, or who is the subject of a disciplinary proceeding pending in this court against whom a petition has been filed pursuant to this section, or upon whom a notice has been served pursuant to section 603.3 (b) of this Part, may be suspended from the practice of law, pending consideration of the charges against the attorney, upon a finding that the attorney is guilty of professional misconduct immediately threatening the public interest. Such a finding shall be based upon * * *

"(ii) a substantial admission under oath that the attorney has committed an act or acts of professional misconduct, or

"(iii) other uncontested evidence of professional misconduct." As detailed below, the record warrants the granting of the petition.

At a deposition conducted July 20, 1995, respondent made false statements which were intended to conceal his misconduct. In particular, respondent falsely reiterated prior statements that his IOLA account had contained only $1,000 of client funds. Bank records subsequently requested and obtained by the Committee established that respondent had made several previously unidentified deposits in his IOLA account in July 1994 and had issued another check in July 1994 that he had not produced. After several specific requests from the Committee for the missing check, on June 7, 1996, respondent produced a copy of the missing check that he had obtained from the bank.

The missing check showed that on July 26, 1994, respondent issued a purported settlement check in the amount of $61,883.75 from his IOLA account to Valerie and Louis Avellanet. A review of the July 1994 IOLA bank statement and other bank records which the Committee obtained demonstrated that at least some of the funds against which the "settlement" check had been drawn were the funds of other clients.

On June 26, 1996, the Committee took respondent's sworn testimony for a second time. Respondent admitted for the first time that he had engaged in neglect and misrepresentation in connection with a medical malpractice action for his clients, Valerie and Louis Avellanet. Specifically, after respondent let the Statute of Limitations expire, he failed to inform his clients of this fact. Rather, respondent intentionally and falsely represented to his clients that he was attempting to negotiate a settlement with a representative of the purported defendants' insurance company.

At this second deposition, respondent also admitted for the first time that in July 1994, he improperly used the funds of other clients to pay the Avellanets. It was also established that respondent went to great lengths to cover up his neglect, including false statements to the Avellanets that he had settled the matter for $125,000, mailing them a check drawn from the IOLA account in the amount of $61,833.75, which amount purportedly represented the balance of the settlement after deducting respondent's so-called contingency fee and a previous "advance" payment made on respondent's IOLA account. Documents and respondent's admissions demonstrate that the source of these funds includes funds belonging to other clients

that respondent had previously deposited into the IOLA account, including the funds from another client's estate and funds from a real estate transaction.

In addition to respondent's bank records, the Committee obtained bank statements for the Estate of Joan Zenyo for the period April 21, 1994 through December 20, 1995. These documents and respondent's admissions also establish that respondent committed misconduct with respect to funds from the Zenyo estate account.

Prior to her death in 1994, Joan Zenyo had been a tax client of respondent for about 10 years. In May 1994, respondent was granted Letters of Administration for Zenyo's estate. As administrator of the estate, respondent had control over some of the funds in the estate account. Zenyo's elderly sister, Marie Beaucaire, was the distributee and in June 1994, Beaucaire's nephew, John Zenyo, received her power of attorney.

On July 21, 1994, respondent wrote a check from the Zenyo estate account payable to himself in the amount of $22,200 without permission from Beaucaire or Mr. Zenyo. Respondent admitted that he intended to use the funds to pay the Avellanets and he knew he was not entitled to withdraw the funds for that purpose. He also admitted that he did not inform Mr. Zenyo of the withdrawal of these funds until after the Committee had commenced an investigation. Respondent admitted that he told Mr. Zenyo only that he had withdrawn the funds as a fee, but then returned the funds because it was too much.

On September 7, 1994, respondent replaced the $22,200 with funds from a "gift" in the amount of $180,000 he claims he received from an elderly client, Julia Schweber, by writing a check from his IOLA account to the Zenyo estate account. Documents and respondent's admissions demonstrate that in a "draft" final accounting for the Zenyo estate which respondent provided to the Committee and to Mr. Zenyo during the course of the investigation, respondent did not affirmatively disclose or explain the withdrawal and subsequent replacement of the $22,200 as reflected in the bank statements attached to the accounting. A final accounting was not filed with the Surrogate's Court.

Finally, documents and respondent's admissions demonstrate that on November 8, 1994, respondent wrote a check in the amount of $25,000 to "CASH" without noting the purpose of the withdrawal. This disbursement violates Code of Professional Responsibility DR 9-102 (E) (22 NYCRR 1200.46), which prohibits checks to cash from fiduciary accounts.

Respondent's characterization of his misconduct as a series of nonvenal errors arising out of a single instance in which he mishandled a medical malpractice case minimizes the extremely serious nature of his misconduct. To the contrary, respondent has engaged in a pattern of misconduct involving a number of clients and occurring over a number of years in which he neglected a legal matter, committed intentional oral and written misrepresentations, commingled and converted client funds. Based upon respondent's own sworn admissions and the documentary evidence, we find that the Committee has established that respondent has committed misconduct which immediately threatens the public interest and which warrants his immediate suspension.

Accordingly, the Committee's petition for an order pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) temporarily suspending respondent from the practice of law until such time as the disciplinary matters before the Committee have been concluded and until further order of this Court, based upon respondent's substantial admissions and uncontested evidence of professional misconduct, is granted.

ROSENBERGER, J. P., WALLACH, KUPFERMAN, NARDELLI and MAZZARELLI, JJ., concur.

Motion granted, and respondent is suspended from the practice of law in the State of New York, effective December 3, 1996, until such time as the disciplinary matters have been concluded, and until the further order of this Court.