[670 NYS2d 441]

In the Matter of MICHAEL F. MULROW (Admitted as MICHAEL FRANCIS MULROW), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, March 19, 1998

### APPEARANCES OF COUNSEL

*Sherry K. Cohen* of counsel *(Hal R. Lieberman,* attorney), for petitioner.

*Michael A. Gentile* of counsel *(Gentile & Benjamin,* attorneys), for respondent.

### OPINION OF THE COURT

Per Curiam.

Respondent Michael F. Mulrow was admitted to the practice of law in the State of New York by the First Judicial Department on April 7, 1980, as Michael Francis Mulrow. At all times relevant to this proceeding, respondent maintained an office for the practice of law within the First Judicial Department.

By order entered December 3, 1996, this Court granted the motion of the Departmental Disciplinary Committee (Committee) for an order pursuant to 22 NYCRR 603.4 (e) (1) (ii) and (iii) suspending respondent from the practice of law until further order of this Court based upon respondent's substantial admissions of professional misconduct and other uncontroverted evidence of misconduct *(see, Matter of Mulrow,* 226 AD2d 61).

Respondent was charged with violating Code of Professional Responsibility (DR) 1-102 (A) (4) and (8), DR 5-101 (A), DR 6-101 (A) (3) and DR 9-102 (A), (B) and (E) (22 NYCRR 1200.3, 1200.20, 1200.30, 1200.46). The charges, as detailed below, relate to respondent's participation in the drafting of a will for two elderly clients in which he was a named beneficiary, and in receiving a substantial cash gift from one of those clients; his neglect of a client's medical malpractice case and his subsequent fraudulent attempts to conceal the same; and his commingling and conversion of clients' funds.

Respondent initially denied the charges in his answer, but he subsequently admitted most of the material allegations pursuant to a prehearing stipulation with staff counsel. The Hearing Panel sustained each of the 12 charges against respondent. On August 1, 1997, the Hearing Panel issued its report and recommendations recommending that respondent be disbarred.

Charges One through Four relate to respondent's representation of two elderly tax clients, Morris and Julia Schweber, whom respondent met in 1982 when he was working at H&R Block as a tax preparer. After respondent started his own tax practice in 1986, the Schwebers became his clients and personal friends. In 1993, the Schwebers advised respondent that they wished to revise their 1982 will, which directed that upon their death their mentally ill son would receive income from a trust fund, and upon his death, the trust principal would

go to certain charitable organizations. The new will drafted by respondent directed that 50% of the trust principal would be left to respondent, and 50% to a church, and that respondent would serve as trustee and executor.

Recognizing the obvious conflict of interest in his preparation of a will in which he was a named beneficiary, respondent asked an attorney friend of his to represent the Schwebers in connection with the will's execution. Respondent was aware that the attorney primarily practiced art law, and had no experience in trusts and estates practice. Nonetheless, respondent brought the attorney to the Schwebers' home, arranged for Mrs. Schweber's nearly 100-year-old sister to act as witness, and then left the apartment while the will was formally executed. Respondent paid the attorney $500 from his own funds as a fee.*

After Mr. Schweber's death in 1994, respondent advised Mrs. Schweber that she could reduce her estate taxes by transferring money out of her estate as a gift. Shortly thereafter, Mrs. Schweber agreed to transfer $180,000 to respondent as a gift, which respondent accepted. On or about September 1, 1994, and without having recommended that Mrs. Schweber consult an independent advisor, respondent transferred the $180,000 to his IOLA account.

The Hearing Panel sustained Charge One, finding that by drafting a client's will in which he was a 50% beneficiary of a sizable estate, and by having an inexperienced attorney represent the clients during the will's execution without rendering any independent advice, respondent accepted legal employment under circumstances where his professional judgment might be affected by his own personal and financial interests in violation of DR 5-101 (A). Charge Two was also sustained on the basis that respondent's conduct regarding the Schwebers' will constituted conduct which adversely reflected on respondent's fitness to practice law in violation of DR 1-102 (A) (8). Charges Three and Four, relating to respondent's advice to Mrs. Schweber to transfer $180,000 to himself as an inter vivos gift without recommending that she receive any independent advice or discussing the apparent conflict, were likewise sustained as violating DR 5-101 (A) and DR 1-102 (A) (8).

Charges Five through Seven relate to respondent's representation of Valerie and Louis Avellanet in a medical malpractice

---

* Respondent claims he was reimbursed by the Schwebers, but the evidence offered does not support this assertion.

case. As respondent concedes, he mistakenly believed that the Statute of Limitations for such actions was three years, and he failed to timely commence the action within the two and one-half year limitations period. The Hearing Panel sustained Charge Five based on respondent's neglect in a legal matter in violation of DR 6-101 (A) (3).

Rather than accepting responsibility for his mistake, however, respondent engaged in an extended scheme to convince the Avellanets that the he was actively pursuing their lawsuit (*see, Matter of Mulrow, supra*). On two separate occasions, respondent mailed checks to the Avellanets for $20,000 and $1,500, respectively, as a "settlement advance." The $20,000 payment was made from respondent's personal funds. Further, on July 22, 1994, respondent informed the Avellanets that the action had been settled for $125,000, and he mailed them a check drawn from his IOLA account for $61,833.75, which amount purportedly represented the balance of the settlement funds minus the advances and respondent's fee. Respondent also prepared purported release and settlement documents for the Avellanets' signature. As he now concedes, there never was any settlement nor any medical malpractice action. Based on these facts, Charges Six and Seven, alleging fraudulent and dishonest conduct (DR 1-102 [A] [4]), and conduct adversely reflecting on respondent's fitness to practice law (DR 1-102 [A] [8]), were sustained by the Hearing Panel.

Charges Eight through Twelve relate to respondent's mishandling and commingling of clients' funds. The Hearing Panel found that in order to fund the Avellanet "settlement," respondent improperly withdrew money from a separate client's estate account (for which he was administrator), and another client's money placed in escrow pursuant to a real estate transaction. Based on this misuse of these clients' money, and despite the fact that respondent ultimately repaid the money, Charges Eight and Ten alleging fraudulent and dishonest conduct in violation of DR 1-102 (A) (4) were sustained. Additionally, since during the course of these transactions respondent commingled personal and client funds, and wrote a check to cash from his IOLA account, thereby violating DR 9-102 (A) and (B) and DR 9-102 (E), respectively, respondent was found guilty of Charges Nine and Eleven. The twelfth charge was sustained since this conduct reflected adversely on his fitness to practice law (DR 1-102 [A] [8]).

The Hearing Panel considered both aggravating and mitigating circumstances before recommending a sanction. Since re-

spondent admitted at the hearing that he gave intentionally false statements to the Committee's staff during the initial investigation of his misconduct (*see, Matter of Mulrow, supra,* at 63), the Hearing Panel found this to be an aggravating factor. The Panel found that the absence of any prior disciplinary record was a mitigating factor, and noted that respondent had an extremely loving and supportive family. However, it rejected respondent's argument that his alleged alcoholism should be considered a mitigating factor. After carefully reviewing the evidence and arguments offered by respondent's counsel, and relating them to the specific allegations of professional misconduct alleged here, the Panel concluded there was no "causal connection between [respondent's] alcoholism and his misconduct."

The Hearing Panel recommended that respondent be disbarred, citing respondent's misappropriation of substantial sums of money that had been entrusted to him as attorney and fiduciary, and his series of fraudulent misrepresentations and falsification of documents to cover up his neglect of a legal matter.

The Committee now moves for an order pursuant to 22 NYCRR 603.4 (d) confirming the findings and conclusions of the Hearing Panel and the recommendation of disbarment. Respondent cross-moves for an order disaffirming the report in its entirety, or alternatively, disaffirming the recommended sanction of disbarment and substituting a sanction of a two-year suspension nunc pro tunc to the date of his interim suspension.

Respondent's arguments challenging some of the Hearing Panel's findings are not substantial, especially in light of his stipulation to most of the material allegations. For example, his argument that Charges Six, Eight and Ten should be dismissed because he acted without the venal intent to harm his clients is misplaced. The requisite venal intent was established by his admissions that he knowingly withdrew funds from his clients' accounts without their permission or authority, and that he used those funds for his own purposes, namely, to make a fictitious settlement payment to cover up his own error (*see, Matter of Britton,* 232 AD2d 17, 19). Respondent's replacement of the converted funds does not negate this venal intent (*supra,* at 19-20). Also, while respondent claims there was no proof that his attorney friend did not render independent, competent advice to the Schwebers regarding the execution of their will, the hearing evidence establishes precisely the opposite.

We confirm both the findings and conclusions of the Hearing Panel and adopt the recommended sanction of disbarment. The intentional conversion of clients' funds is grave misconduct which, in virtually all cases, mandates disbarment (*Matter of Britton, supra,* at 20; *Matter of Rivera*, 230 AD2d 74; *Matter of Ampel*, 208 AD2d 57, 60). Respondent's conduct was rendered more egregious since it was undertaken in order to perpetrate a fraud upon his client. Such deceitful misconduct may not be tolerated by members of the legal profession. The only serious argument offered by respondent is his request that we reduce the sanction to a two-year suspension based primarily on his alcoholism. We decline to do so. We agree with the Hearing Panel that no causal connection was demonstrated between respondent's condition and his misconduct (*cf., Matter of Mc-Enroe*, 174 AD2d 67). His representations regarding the Avellanet settlement and his conversion of other clients' funds, were, by his own admission, not the result of mistake or negligence but were intentional acts. The calculated nature of this misconduct convinces us it was unconnected to any condition of alcoholism.

Accordingly, the petition to confirm the Hearing Panel's report and recommendation is granted, the cross motion to disaffirm denied, respondent is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law.

SULLIVAN, J. P., ROSENBERGER, NARDELLI, WALLACH and MAZZARELLI, JJ., concur.

Petition granted, the Hearing Panel's report and recommendation confirmed, the cross motion to disaffirm denied, and respondent disbarred from practice as an attorney and counselor-at-law in the State of New York, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, all effective immediately.