[812 NYS2d 517]

In the Matter of MAURICE B. MELMAN (Admitted as MAURICE BERNARD MELMAN), a Suspended Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, April 11, 2006

**APPEARANCES OF COUNSEL**

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Jorge Dopico* of counsel), for petitioner.

No appearance for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Maurice Bernard Melman was admitted to the

practice of law in New York by the First Judicial Department on June 2, 1997, and at all times relevant to these proceedings, has maintained an office for the practice of law within this Department.*

By order entered October 25, 2005, this Court granted the Committee's motion, on default, and immediately suspended respondent from the practice of law until further order of the Court based upon his wilful failure to cooperate with the Committee's disciplinary investigation into six complaints and uncontested evidence of professional misconduct (*Matter of Melman*, 25 AD3d 38 [2005]).

Respondent was served with a notice and statement of charges that alleged he misappropriated and converted a total of approximately $17,668 from four client settlements which he used for his own use in violation of Code of Professional Responsibility DR 1-102 (a) (4) (conduct involving dishonesty, fraud, deceit, or misrepresentation [22 NYCRR 1200.3]); failed to maintain intact client settlements in his escrow account in violation of DR 9-102 (a) (prohibition against misappropriation of client funds [22 NYCRR 1200.46]); failed to promptly pay a client settlement funds as requested in violation of DR 9-102 (c) (4) (failure to promptly pay client funds as requested); failed to cooperate with the Committee's investigation of professional misconduct in violation of DR 1-102 (a) (5) (conduct prejudicial to the administration of justice); falsely promised the Committee that he would cooperate with the investigation and pay his clients their portion of the settlements due them in violation of DR 1-102 (a) (4); and failed to return his clients' communications regarding their settlements in violation of DR 6-101 (a) (3) (neglect of a legal matter [22 NYCRR 1200.30]). In addition, the charges alleged that by engaging in a total of 21 separate and diverse counts of misconduct, respondent engaged in conduct that adversely reflected on his fitness to practice law in violation of DR 1-102 (a) (7).

On June 29, 2005, the Committee served respondent with the charges by mail at his residence and notified him that a hearing had been scheduled for August 3, 2005. On July 1, 2005, the Committee sent a letter to the Referee and respondent confirming that respondent had been served and notified of the August

---

* During the time relevant to the charges, respondent maintained two law offices, currently, however, both his Manhattan and Bronx offices have been closed. Thus, all notifications about these proceedings were sent to respondent's home address.

3rd hearing. When respondent failed to answer the charges or communicate with the Committee, the Committee advised him by letter dated July 25, 2005, that his failure to answer the allegations meant that the charges would be deemed admitted pursuant to 22 NYCRR 605.12 (c) (4). Respondent did not contact the Committee or file an answer to the charges.

Without notifying the Committee, at around 8:00 P.M. on the evening before the hearing, respondent left a telephone message at the Referee's home asking for an adjournment. At 8:38 A.M., on the morning of the August 3rd hearing, respondent sent a fax to the Committee requesting an adjournment of 30 days claiming he had to accompany his mother for daily radiation and chemotherapy treatments. The Committee staff attorney called respondent shortly before the hearing but was only able to reach his voice mail.

On August 3, 2005, the Referee decided to proceed despite the fact that respondent did not appear or submit an answer to the charges. The Committee introduced more than 33 exhibits including subpoenaed bank records of respondent's escrow account and correspondence by the Committee directing respondent to answer the charges and appear for his deposition. At the conclusion of the hearing the Referee sustained all 21 charges based on respondent's default and the documentary evidence.

The Referee also granted the Committee's request to adjourn and continue the hearing on August 10th to permit respondent another opportunity to defend himself, present any mitigation or move to vacate the default. On August 4th, the Committee left a voice mail message for respondent and sent a letter informing him of the adjourned date for the continuation of the hearing. The Committee made it clear to respondent that if he wished a further adjournment, he would have to make an application to this Court.

On August 10, 2005, at 8:48 A.M., respondent faxed a letter to the Committee requesting a 30-day adjournment claiming, once again, that his mother was receiving medical treatment but there is no record of respondent making an application to this Court. The Referee then denied the adjournment request and directed the parties to submit by September 13, 2005 findings of fact, conclusions of law and a recommended sanction. The Committee submitted a brief; the respondent submitted nothing.

The Referee issued his report on October 8, 2005, adopting the Committee's proposed findings, conclusions and recommendation of disbarment. The Referee determined that respondent

had engaged in "a pattern of serious misconduct involving his intentional conversion of four client settlements totaling about $17,668," failed to cooperate with the Committee's investigation by, among other things, not answering six complaints, not providing bank records and client files as directed by a judicial subpoena, and by failing to appear for a deposition, all in violation of DR 1-102 (a) (4), (5) and (7), DR 6-101 (a) (3) and DR 9-102 (a) and (c) (4).

Specifically, the Referee found that after respondent deposited a $2,500 settlement check into his escrow account on or about August 2, 2004 on behalf of his client Oscar Grant, respondent refused to respond to Grant's inquiries seeking his share of the settlement. On September 22, 2004, the Committee forwarded Grant's complaint to respondent directing him to answer. About five days later, respondent sent Grant a check in the amount of $1,661.67, which represented his share of the settlement proceeds, but never provided an answer to the disciplinary complaint.

The Referee also found that on September 10, 2004, the Lawyers' Fund for Client Protection notified the Committee and respondent that a $200 check issued from respondent's escrow account had been returned for insufficient funds. The Committee wrote to the respondent directing him to submit an answer regarding the dishonored check report and to provide escrow account records for the preceding six months. Although the Committee advised respondent that his failure to reply could subject him to discipline, and despite additional reminders, respondent never answered this complaint nor did he produce his escrow records.

A further determination was made by the Referee regarding a complaint filed by Robert Hickman. In late July 2004, respondent received a $4,500 settlement check on Hickman's behalf which was deposited into respondent's escrow account. Although the check was credited to his account and despite repeated requests from Hickman seeking his $3,000 share, respondent did not forward Hickman's share. Rather, according to subpoenaed bank records, respondent wrote to himself and negotiated for his own use approximately 33 checks totaling over $3,600, leaving an escrow balance of only $1,490.30, when he was obligated to maintain $3,000 on behalf of Hickman. Although the Committee forwarded Hickman's complaint to respondent, no answer has been forthcoming and respondent has still not paid Hickman his share of the proceeds.

The Referee also found that in early September 2004 respondent received a settlement check on behalf of Secundino Marte in the amount of $5,000. Although Marte and respondent endorsed the check and it was negotiated, respondent did *not* deposit it into his escrow account. When Marte was unable to contact respondent, he filed a complaint with the Committee. Notwithstanding two demands by the DDC for an answer to Marte's complaint, no response was received.

A fifth complaint involved a settlement check in the amount of $8,000 which respondent received on behalf of Jose A. Polanco, and which he deposited into his escrow account in August 2004. From August to December 2004, Polanco repeatedly and unsuccessfully called respondent seeking his portion of the settlement. The bank records revealed that from August 6 to September 20, 2004, respondent wrote checks to himself that brought the balance of his escrow account to $5,196.97, a little below the $5,333.33 that he was obligated to maintain intact on Polanco's behalf. Thereafter, respondent continued to write to himself and negotiate for his own use from his escrow account many more checks which, by January 31, 2005, virtually depleted all of the client funds. Respondent never answered Polanco's complaint nor paid his share of the settlement.

The Referee also found that on August 12, 2004, respondent and his client Teofilo Batista signed two releases to settle a claim against the same defendants for property damage and personal injury for $3,000 and $6,000, respectively. Batista repeatedly and unsuccessfully attempted to contact respondent to receive his share of the proceeds. On January 13, 2005, the Committee sent a letter to respondent directing him to answer Batista's complaint, however, to date, respondent has not answered nor has he paid Batista his share of the settlement.

Consequently, the Referee concluded that, among other things that, there was a persistent failure to cooperate with the Committee; that the respondent did not maintain intact settlement funds owed to his clients because he converted them for his personal use; and that he still owes his clients a total of $17,668.

With regard to the appropriate sanction, the Referee noted that this Court consistently disbars attorneys for intentional conversion of client funds and that there were no extraordinary mitigating circumstances in respondent's life that would warrant any consideration to deviate from disbarment (*see Matter of Birnbaum*, 308 AD2d 180 [2003]). Finally, the Referee determined that respondent engaged in a "serious and sustained

pattern of misconduct and a total disregard for these disciplinary proceedings," and that he should be disbarred *"quickly before many more innocent clients fall prey to his false and devious tactics."*

A Hearing Panel met to consider the Referee's report. Despite being notified of the hearing by three separate letters, respondent did not submit papers in response to the charges, he did not seek an adjournment, nor did he appear at the hearing.

On November 10, 2005, the Hearing Panel adopted the Referee's report in full, including his recommendation of disbarment. The Panel concluded that the "respondent is without acknowledgment of his misconduct, without apology for his misconduct, without contrition for his misconduct and without defense to his misconduct."

The Committee now seeks an order pursuant to 22 NYCRR 603.4 (d) and 605.15 (e) (2), confirming the findings of fact, conclusions of law and recommended sanction of disbarment in the report of the Referee and determination of the Hearing Panel. The Committee argues that despite being fully aware of the serious charges against him for his pattern of grave misconduct respondent did not answer or otherwise appear in defense of the charges, and did not respond even after being served with this petition at his home address.

Furthermore, the Committee correctly maintains that based on the relevant case law, disbarment is the only appropriate sanction since respondent intentionally converted to his own use client funds and totally disregarded these disciplinary proceedings (*Matter of Mulrow*, 241 AD2d 7 [1998] [disbarment for intentional conversion of client funds]; *Matter of Stein*, 189 AD2d 128 [1993] [disbarment where charges of conversion of client funds and lack of cooperation, among others, were deemed admitted in light of attorney's default]).

In view of respondent's default, and extensive documentary evidence in the form of bank records which amply confirmed the uncontroverted allegations of his conversion of client settlement funds, the Committee's petition to confirm the findings of fact and conclusions of law of the Referee and Hearing Panel should be granted and respondent disbarred, effective immediately.

ANDRIAS, J.P., MARLOW, GONZALEZ, SWEENY and CATTERSON, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York, effective the date hereof.