[820 NYS2d 14]

In the Matter of CARLOS PEREZ-OLIVO, an Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JU-DICIAL DEPARTMENT, Petitioner.

First Department, August 3, 2006

---

APPEARANCES OF COUNSEL

*Thomas J. Cahill, Chief Counsel, Departmental Disciplinary Committee*, New York City (*Andral N. Bratton* of counsel), for petitioner.

*Carlos Perez-Olivo*, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

Respondent Carlos Perez-Olivo was admitted to the practice of law in the State of New York by the First Judicial Department on December 1, 1980. At all times pertinent to the charges against him, he maintained an office for the practice of law within the First Judicial Department. Respondent currently maintains a law office in Queens, New York.

Respondent was initially charged with disciplinary violations related to his representation of six clients. However, when two clients were unable to appear as witnesses, the Departmental Disciplinary Committee (the Committee) withdrew the charges related to them. Following a hearing, the Referee sustained 14 out of 28 charges of misconduct, and recommended disbarment based on respondent's conversion of client funds and the totality of his misconduct. The Hearing Panel supported confirming the Referee's findings of misconduct and agreed with her assessment that disbarment was an appropriate sanction. The salient facts adduced and conclusions reached during the hearings are as follows:

Charges One through Seven involved respondent's representation of the first of four clients, all of whom were criminal defendants. This client came to the respondent after having been convicted at a jury trial. She was facing incarceration and deportation. Her family and friends paid respondent $20,500 to appear at her sentencing hearing, to seek a new trial on her behalf, and to appeal her conviction. The respondent submitted a perfunctory application for an adjournment of sentencing and for a new trial, which was rejected by the court because it did not have the required supporting memorandum of law or affidavit.

Respondent's client was then sentenced to prison. Respondent filed a timely notice of appeal on her behalf, but failed to

perfect the appeal, which was dismissed. With full knowledge of this fact, respondent went to the prison where his client was incarcerated, and persuaded her to "withdraw" her appeal as "frivolous." Respondent also secured her authorization to file an action challenging the effectiveness of her trial counsel at the criminal trial at an "appropriate" time. His client was deported, and her family made repeated requests for a partial refund of the fee advance or an accounting. The respondent did not honor these requests.

The Referee sustained Charges One, Four, Five, Six, and Seven. As to Charge One, the Referee concluded that respondent's actions in misrepresenting to a vulnerable client that her appeal was frivolous and inducing her to withdraw her appeal which had already been dismissed due to respondent's default violated Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3). As to Charge Four, the Referee concluded that by failing to file a brief with the Second Circuit and, thereafter, misrepresenting to his client that her appeal was meritless, respondent intentionally prejudiced or damaged a client during the course of his professional relationship in violation of DR 7-101 (a) (3) (22 NYCRR 1200.32). Charge Five was sustained upon the Referee's finding that by failing to return any portion of an unearned retainer respondent engaged in conduct in violation of DR 2-110 (a) (3) (22 NYCRR 1200.15). The Referee concluded that Charge Six was established because respondent's actions and inactions constituted neglect of a legal matter in violation of DR 6-101 (a) (3) (22 NYCRR 1200.30). Finally, in sustaining Charge Seven, the Referee found the totality of respondent's conduct in his representation of this client adversely reflected on his fitness as a lawyer in violation of DR 1-102 (a) (7).

Charges Eight through Ten concerned respondent's involvement in a bail matter for a second defendant. The defendant's sister gave respondent a check for $10,000 to post her brother's bail, but no formal written retainer agreement was executed. The defendant, an illegal immigrant, had been arrested in Pennsylvania. Respondent did not tell his client or his client's sister that he was not admitted to practice law in Pennsylvania. One month later, respondent met with his client's sister and her cousin, because defendant's sister was unhappy with his lack of progress. Respondent attempted to return the $10,000, and offered to withdraw. The defendant's sister did not accept the money at that time, and expressed an interest in having respon-

dent remain as counsel for her brother. A few weeks later respondent appeared in the Pennsylvania court and asked to be excused because "there was no attorney-client relationship." In court, the defendant's sister posted a newly assembled fund of $10,000 as bail and retained Pennsylvania counsel.[1] She testified that at that point, a month after she had retained him, she expected respondent to return the original $10,000 in bail money to her. Respondent refused to return the unused bail money, saying that he had the right to collect his fees. At one point respondent offered to return $2,000 of the $10,000, but his client's sister demanded full repayment.

The Referee did not find conversion in this matter, deeming it a fee dispute and an ongoing miscommunication as to whether the defendant could be released on bail. However, she sustained Charge Ten which charged respondent with failing to render an appropriate account to his client's sister regarding the $10,000 of her money in his possession in violation of DR 9-102 (c) (3) (22 NYCRR 1200.46).

Charges Eleven through Fourteen involve the alleged intentional conversion of returned bail money from a third criminal defendant. The defendant's sister and her family asked respondent to represent the defendant. Although there was no written retainer agreement, the defendant's sister alleged that respondent set a flat fee of $5,000, with half ($2,500) paid up front. The family sold their home in the Dominican Republic in order to pay the deposit and to post bail of $15,000.

Thereafter, the defendant accepted a negotiated guilty plea. After sentencing, respondent persuaded defendant's sister to assign the $15,000 bail refund to him on the ground that he could arrange for the defendant's release more quickly than the family could. He also advised that his total fee would now be $7,500, of which they still owed him $5,000. The family was upset by the unexpected increase. However, they had no written confirmation of respondent's $5,000 quote, and they believed they had no choice but to comply. At defendant's sister's insistence, respondent handwrote and signed a note acknowledging that of the $15,000 in bail money that had been assigned to him, he would keep $5,000 for his fees and return the balance to defendant's sister.

---

1. Thereafter, a plea bargain on a state charge was quickly entered into for which she paid a $2,000 fee to local counsel but her brother remained in jail pending a "hold" by the immigration authorities.

Thereafter, respondent refused to return any portion of the bail money to the sister, or to account to the family for any part of the bail funds. Unable to reach respondent, defendant's sister applied directly for release of the bail. She was told that the $15,000 had already been released to respondent. When they tried to follow up with respondent, they learned that he had relocated to Puerto Rico.[2]

The Referee sustained Charges Eleven and Thirteen, finding that respondent converted bail money belonging to the defendant's family to his own use in violation of DR 1-102 (a) (4) (conduct involving fraud, dishonesty, deceit or misrepresentation), and failed to pay the funds they were entitled to by refusing to return any portion of the bail money in violation of DR 9-102 (c) (4). She also sustained Charge Fourteen, concluding that respondent violated DR 9-102 (c) (3) by failing to render an appropriate accounting to defendant's sister regarding $15,000 of her money that he had in his possession.

Charges Eighteen, Nineteen, and Twenty involved respondent's representation of a fourth criminal defendant. The respondent executed a written retainer agreement with this client which provided as follows:

> "By reading and signing this contract, you agree to pay [respondent] an initial deposit of $10,000 that will be deducted from the total amount being charged, a flat fee of $20,000 . . . . *It is understood and accepted by you that [these] deposit fees are nonrefundable regardless of the time that I spent on this case or if for whatever reason I am removed from the case."*

Respondent was also retained by an alleged coconspirator, and although respondent alleged that he had obtained waivers from both clients, the District Court Judge determined that respondent was disqualified from the representation. Respondent refused to return the $10,000 his client had paid him, claiming that he had spent 23 hours of work on the case, including research on the conflict of interest issue.

Charge Eighteen was sustained upon respondent's stipulation that executing an agreement requiring a "non-refundable" deposit fee violated DR 2-106 (c) (3) (22 NYCRR 1200.11) and DR

---

**2.** The client's sister originally filed a disciplinary complaint in 1996, and renewed it in 2001, upon learning of respondent's return from Puerto Rico, where he had moved from 1996 to 1999.

2-110 (a) (3), and the principles articulated in *Matter of Cooperman* (83 NY2d 465 [1994]). The Referee also sustained Charge Nineteen, concluding that respondent's reliance upon his conflict of interest research to justify his refusal to return any portion of respondent's unearned retainer violated DR 2-110 (a) (3). Charge Twenty was sustained upon the finding that respondent charged an excessive fee in connection with research on a self-created conflict issue in violation of DR 2-106 (a). Charge Twenty-one was also sustained, upon a finding that respondent failed to decline an employment opportunity which would involve a conflict of interest in violation of DR 5-105 (a) (22 NYCRR 1200.24).

In her determination, the Referee also sustained Charge Twenty-four, which related to respondent's conduct with all four of his clients. This charge alleged that respondent had engaged in conduct adversely reflecting upon his fitness as a lawyer in violation of DR 1-102 (a) (7).

As to aggravating factors, respondent was admonished in 1998 for similar misconduct, such as failing to provide his client an account regarding $10,000 in legal fees, failing to promptly refund an unearned fee, and failing to cooperate with successor counsel. Moreover, in November 2000, respondent forfeited his license to practice law in Puerto Rico at a time when he was facing disciplinary charges based upon allegations similar to those raised here.

In mitigation, the Referee pointed to respondent's 25 years of experience as a skilled criminal trial attorney. However, respondent did not produce character testimony, only character letters, largely from judges, who attested to his "competency" as a trial lawyer. The Referee also noted that respondent did not express any remorse. While he expressed his willingness to repay funds received from clients if the Court or Referee were to so direct, he did not acknowledge the inappropriateness of his conduct nor the importance of protecting his clients' welfare.

The Hearing Panel commented that based upon respondent's 25 years as an attorney, he should have had the judgment and experience not to have committed the misconduct sustained in the Referee's report. It concurred with the Referee's analysis of precedent and found respondent's misconduct warranted disbarment.

The Committee now seeks an order: confirming the report and recommendation of the Hearing Panel; disbarring respondent from the practice of law; and, ordering respondent to make

$10,000 in monetary restitution to the client whose bail money he converted for personal use, and, where appropriate, to the Lawyers' Fund for Client Protection (Judiciary Law § 90 [6-a]). Respondent asks this Court to modify the recommended sanction and impose either a public censure or, in the alternative, no more than a six-month suspension.

The record provides ample support for our confirmation of the findings of fact and conclusions of law made by the Referee and Hearing Panel, sustaining 14 charges of professional misconduct. Respondent repeatedly refused to return unearned funds or retainers to clients. Moreover, with respect to one client, respondent refused to refund $10,000 of $15,000 in bail money, despite having executed a handwritten agreement to do so (*see Matter of Mitnick*, 248 AD 198 [1936] [attorney disbarred for converting bail money to his personal use]; *Matter of Gertler*, 222 AD 270 [1928]). Even now, respondent argues that he was entitled to retain the money.

As both the Referee and Hearing Panel asserted, virtually without exception attorneys such as respondent who have intentionally converted client funds are disbarred (*Matter of Schmell*, 27 AD3d 24 [2006]; *Matter of Blumstein*, 22 AD3d 163 [2005]; *see also Matter of Bernstein*, 285 AD2d 233 [2001], *appeal dismissed* 97 NY2d 725 [2002] [attorney who converted $4,400 entrusted to him for client's bail but argued he had a retaining lien, disbarred]).

Moreover, taking into consideration respondent's other misconduct, including neglect of a client matter, failure to file an appeal resulting in its dismissal, failure to refund unearned retainers, failure to render appropriate accounts to clients, failure to promptly pay client funds in his possession which the client is entitled to receive, using a nonrefundable retainer agreement and requiring a nonrefundable deposit, charging an excessive fee, and failure to decline proffered employment that would involve a conflict of interest, disbarment is appropriate. There are no extraordinary mitigating circumstances which would warrant a departure from this sanction.

Accordingly, the Committee's petition should be granted, the report and recommendation of the Hearing Panel which confirmed the findings of fact and conclusions of law and the recommended sanction of the Referee confirmed, and the respondent disbarred from practice as an attorney and counselor-at-law in the State of New York, and his name stricken from the role of attorneys. Respondent is also directed to make monetary

restitution pursuant to Judiciary Law § 90 (6-a) to the sister of the client at issue in Charge Eleven, in the amount of $10,000, and, where appropriate, to the Lawyers' Fund for Client Protection.

Tom, J.P., Mazzarelli, Friedman, Marlow and Malone, JJ., concur.

Respondent disbarred, and his name stricken from the roll of attorneys and counselors-at-law in the State of New York effective the date hereof. Respondent directed to make monetary restitution, as indicated.